1999 ND 168

David GRABER, Respondent and Appellant,

v.

LOGAN COUNTY WATER RE-SOURCE BOARD, Respondent and Appellee

and

Vernon Burkle, Complainant and Appellee.

No. 990029.

Supreme Court of North Dakota.

Aug. 25, 1999.

Joseph J. Cichy, Olson Cichy, Bismarck, for respondent and appellant.

Richard E. Herr, Herr & Ogren, Wishek, for respondent and appellee.

David R. Bliss, Bismarck, for complainant and appellee.

VANDE WALLE, Chief Justice.

[¶1] David Graber appealed from an order affirming a decision of the Logan County Water Resource Board ("Board") to close a drain on Graber's property. We conclude the Board did not act arbitrarily, capriciously or unreasonably in ordering closure of the drain. We affirm.

I

[¶2] David Graber owns farmland in Logan County acquired by his father in 1967. Northwest of the Graber farmstead is a small wetland with an outlet and a channeled, multi-culvert artificial drainage ditch. Graber claims the ditch has been there for many years. He cleaned it out in 1967 and 1994 and also placed culverts to create permanent access across the ditch in 1974 or 1975. The water from the ditch flows east and northeast across Graber's property and travels over farmland owned by Graber's neighbor, Vernon Burkle.

[¶3] In July 1995, Burkle and another neighbor filed complaints with the Board against Graber and his father alleging illegal drainage. Burkle contended water from Graber's drain was flooding his land and fences, and livestock waste from Graber's feedlot operation was being flushed from the drain. Burkle contended the livestock waste polluted downstream waters, killed fish stocked in his slough, and made his livestock sick. After an on-site

investigation of the ditch and its drainage, the Board in August 1995 ordered Graber to restore the slough to its original level and close the ditch.

[¶ 4] On September 26, 1995, Graber appealed the Board's decision to the district court and later moved for leave to adduce additional evidence under N.D.C.C. § 28–34–01(3). On November 29, 1995, the court ordered the taking of additional evidence, after which the "Board may amend or modify its decision and shall file with this Court a transcript of the additional evidence together with its new or modified decision, if any." Following a February 1996 hearing, during which the parties presented evidence, the Board dismissed the drainage complaints. The Board found the complainants failed to prove the drain was not constructed before 1957, when the drainage permit law became effective, and any work done on the drain after 1957 "was merely in the nature of maintenance and did not increase the volume of water being discharged. . . ."

[¶ 5] On April 12, 1996, Burkle appealed to the district court, moved for leave to adduce additional evidence, and requested Graber deposit the estimated cost of a transcript of the evidence under N.D.C.C. § 28–34–01(2). In May 1996, the court granted Burkle's requests and another hearing was held before the Board in September 1996. In a two-to-one decision issued in November 1996, the majority of the Board ruled the drain was constructed without a permit sometime after July 1, 1957, the pond being drained has a watershed of more than 80 acres, and Burkle had experienced adverse effects from the drainage. The Board ordered Graber to close the drain, and later entered a supplemental order directing closure of the drain on July 17, 1998, outlining the specifics of how the drain should be closed.

[¶ 6] On August 17, 1998, Graber filed an amended notice of appeal with the district court challenging the Board's order to close the drain. The district court affirmed, ruling for the first time the Board's decision was not arbitrary or capricious.[1] Graber's appeal from this order to close the drain is the subject of the appeal before us.

## II

[¶ 7] In an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. *Pic v. City of Grafton*, 1998 ND 202, ¶¶ 6, 8, 586 N.W.2d 159. Our function is to independently determine the propriety of the decision, without according any special deference to the district court's decision, and unless the Board acted arbitrarily, capriciously or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. *Anderson v. Richland County Water Res. Bd.*, 506 N.W.2d 362, 367 (N.D.1993). A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. *Ames v. Rose Tp. Bd. of Tp. Supervisors*, 502 N.W.2d 845, 851 (N.D. 1993). We consider the issues raised in Graber's appeal in light of these standards.

## A

[¶ 8] There is no dispute the watershed area which receives the drained water exceeds 80 acres and Graber did not obtain a permit or flowage easements from downstream landowners before working on the ditch in 1967 and 1994. Rather, the

1. The court believed N.D.C.C. § 61–32–08 "allows and provides for involvement of the North Dakota State Engineer to determine the method of closure of drains . . . which have been constructed contrary to statute, and . . . the State Engineer is the appropriate office and agency to describe the same with the necessary degree of particularity." The court ordered the Board to consult with the State Engineer "so as to establish with particularity the necessary descriptions and methods essential for appropriate restoration of said natural drain." No issue is raised concerning this portion of the court's order.

hearings in this case focused mainly on whether the drainage ditch on Graber's property was dug before or after 1957. The law in effect at the time a drain is constructed controls, *see North Dakota State Water Com'n v. Board of Managers,* 332 N.W.2d 254, 258–59 (N.D.1983), and the predecessor statute to N.D.C.C. § 61–32–03, requiring drainage permits, was not enacted until 1957. *See* 1957 N.D. Sess. Laws ch. 373, §§ 1, 2; former N.D.C.C. § 61–01–22. At the hearings before the Board, Graber attempted to establish the drainage ditch was constructed before 1957 when no permit was required. He argued all work done on the ditch in 1967 and 1994 was routine maintenance for which a drainage permit was not required. Graber contends the Board's finding the drain was constructed after July 1, 1957 is not supported by the evidence.

[¶ 9] However, several witnesses testified no man-made ditch existed on Graber's property before July 1, 1957. Ed Barreth, who had farmed the property in 1958, testified he could not remember a drainage ditch being there at that time and he was able to cross the terrain with his pickup and tractor. Stanley Knecht testified he first became familiar with the Graber farm in the late 1950s and early 1960s. He testified he painted what is now the Graber barn in 1962 or 1963 and the waterway in question was "just natural drain, natural contour of the land." Knecht testified he leased the Graber farm from 1973 to 1975 and no ditch existed at that time either. Vic Wilhelm, who moved onto what is now Burkle's property in 1965, testified "[t]here was no ditch, no man-made waterway" in 1967, at least until Graber's father opened the ditch that year. When Wilhelm noticed the stream of water flowing from the ditch onto his land, he demanded that Graber's father plug the ditch, and Graber's father complied. Vernon Burkle testified he leased the Graber farm in 1970 and 1971 and there was no ditch in existence at that time. Burkle's father also testified the ditch was constructed in 1967, but was closed in 1969 or

1970 and remained closed until at least 1978.

[¶ 10] Relying on 1952 and 1960 aerial photos, Graber attempted to show there was no artificial drain in 1952, but there was an artificial drain in 1960. However, this photographic evidence does not prove the ditch was dug before 1957. It only shows an artificial drain was constructed before the photo was taken in 1960. A civil engineer, Stephen Hoetzer, testified he found no evidence of any artificial ditch on Graber's land before 1960. We conclude the Board did not act arbitrarily, capriciously or unreasonably in finding the ditch was constructed after July 1, 1957.

## B

[¶ 11] Former N.D.C.C. § 61–01–22 exempted from the permit requirement a person who constructed a drain "under the supervision of a state or federal agency." *Compare* N.D.C.C. § 61–32–03 (exempting "drain constructed under the supervision of a state or federal agency, as determined by the state engineer"). Graber contends the Board erred in failing to find the exemption applies in this case.

[¶ 12] To qualify for this exemption, "'supervision' requires greater involvement in a drainage project than rendering mere technical assistance." *Matter of Persons,* 334 N.W.2d 471, 474 (N.D.1983). Graber's father testified that in 1967, before he hired a dragline company to excavate the drainage ditch, Chris Hansen from the local office of the Soil Conservation Service ("SCS") came to the property and surveyed to determine the "bottom of the lake and our ditch." Graber also testified that before "cleaning" the ditch in 1994, he and his father received permission from the SCS to do so. This activity appears to be in the nature of "mere technical assistance." Furthermore, Burkle testified he inquired at the SCS office, and employees were unable to find any documentation of SCS involvement with Graber's ditch.

[¶ 13] The Board was not required to accept Graber's unsupported testimony of state or federal agency involvement with the drainage ditch. We conclude the Board did not act arbitrarily, capriciously or unreasonably in finding there was no supervision by a state or federal agency to exempt Graber from the permit requirement.

### C

[¶ 14] Under N.D.C.C. § 61–32–07, "[o]nly a landowner experiencing flooding or adverse effects from an unauthorized drain constructed before January 1, 1975, may file a complaint with the water resource board." Graber contends Burkle had no standing to file a complaint because he did not establish that he experienced flooding or other adverse effects caused by the drainage.

[¶ 15] Graber argued any problems Burkle experienced were not caused by the drain, but were caused by a downstream dam that holds water back on Burkle's property. However, the Board members conducted an on-site inspection and could see water was flowing from the drain onto Burkle's property. The Board's chairman acknowledged Graber had told him the purpose of the ditch was "for draining that lake," and the chairman testified downstream landowners could suffer damage from the drainage during a high water year. Burkle testified water began draining onto his land when Graber re-dug the ditch in 1994 and the water was flooding his pasture land. Burkle testified between 15 and 20 acres were flooded, ruining fences on both sides of a quarter section of land and killing the grass. We conclude the Board did not act arbitrarily, capriciously or unreasonably in finding Graber's drain caused damage to Burkle's property.

### D

[¶ 16] Graber contends Burkle does not have standing to complain about damages caused by the drain because Graber has acquired a prescriptive easement allowing him to drain water across Burkle's land.

[¶ 17] An easement by prescription may be obtained on flooded land if there is a continuous and uninterrupted adverse use for the 20 year period of prescription. *Nagel v. Emmons County Water Resource District*, 474 N.W.2d 46, 48–49 (N.D.1991). Whether the facts support the conclusion a person has obtained a prescriptive easement is a question of law, and questions of law are fully reviewable on appeal. *Gajewski v. Taylor*, 536 N.W.2d 360, 361 (N.D.1995). Here, Graber failed to establish the elements for a prescriptive easement to flood Burkle's property.

[¶ 18] Burkle testified flooding from the unlawful drainage started when Graber dug the ditch in 1967. Shortly after the flooding started, Graber's father filled the ditch after Wilhelm complained and demanded that he do so. Several persons testified there was no drainage during the 1970s onto what is now Burkle's property. The water flowage problems apparently ceased on Burkle's property until 1994 when Graber again opened the ditch to drain his wetland. Burkle filed a complaint with the Board shortly afterward. The findings by the Board reveal there was no continuous and uninterrupted 20 year prescriptive period in which Graber's drainage caused flooding on Burkle's property. Consequently, as a matter of law, Graber did not acquire a prescriptive drainage easement on Burkle's property.

### III

[¶ 19] The Board did not act arbitrarily, capriciously or unreasonably in ordering closure of Graber's drain. The order of the district court is affirmed.

[¶ 20] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.