2006 ND 189

**Mark TIBERT and Suzi Tibert, and Melvin Tibert and Cathy Tibert, Plaintiffs and Appellants**

v.

**The CITY OF MINTO, through its governing body, and incorporated political subdivision, Defendant and Appellee.**

No. 20050393.

Supreme Court of North Dakota.

Aug. 28, 2006.

David C. Thompson, David C. Thompson, P.C., Grand Forks, ND, for plaintiffs and appellants.

Ronald F. Fischer (argued), Pearson Christensen & Clapp, P.L.L.P., Grand Forks, ND, and Nicholas B. Hall (on brief), Grafton, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Mark Tibert, Suzi Tibert, Melvin Tibert, and Cathy Tibert appealed from a final order of the district court affirming the City of Minto's decision to grant a building permit to Minto Grain, LLC, for the construction of three temporary grain storage structures. We affirm, concluding the City's approval of the building permit was not arbitrary, capricious, or unreasonable, and is supported by substantial evidence.

I

[¶ 2] A tract of land known as Kilowatt Drive is a dirt and gravel road that runs along the eastern portion of Minto Grain's property, formerly owned by BNSF Railway, and borders the Tiberts' property in Minto. The road has been the focus of a substantial amount of boundary and title litigation. *See Nowling v. BNSF Ry.*, 2002 ND 104, 646 N.W.2d 719; *Tibert v. City of Minto*, 2004 ND 97, 679 N.W.2d 440; *Minto Grain, LLC v. Tibert*, 2004 ND 107, 681 N.W.2d 70; *Tibert v. Minto Grain, LLC*, 2004 ND 133, 682 N.W.2d 294; and *Tibert v. Slominski*, 2005 ND 34, 692 N.W.2d 133.

[¶ 3] Relevant to this appeal is an October 30, 2002, "EASEMENT for IN-GRESS and EGRESS" executed by Bill Slominski, president of Minto Grain, as the grantor, to the City of Minto, as the grantee, concerning the 80–foot–wide roadway. In the document, Minto Grain and the City acknowledged that the roadway "exists to service commerce needs upon the railroad, including the distribution of agricultural goods, and was established for that purpose"; that the City "has permissively used the roadway for several years as a roadway for access purposes of its residents"; that Minto Grain "desires to improve its property and business, to include the widening of the roadway" and to "preserve its property for the needs of commerce along the rail, and limit the permissive non-commercial use by the public"; and that the City "desires to foster commerce along the rail, limit the non-commercial use of the roadway by the public, and provide general access to residences now located east of the roadway." The easement provides:

NOW THEREFORE for the sum of One Dollar and other valuable consideration, the GRANTOR hereby grants to the GRANTEE a limited easement consisting of a right of ingress and egress over and across the premises above described for the purposes stated herein, in perpetuity, revoking all prior agreements, to have and to hold said right of ingress and egress, subject to the following:

1) GRANTOR shall continue to own and control the roadway, and utilize said roadway for its commercial purposes, including the facilitation of the safe passage of trucks to and from the rail.

2) GRANTOR reserves the right to limit access upon the roadway, police the roadway, and to promulgate rules and regulations upon the roadway in a manner to foster a safe and orderly operation of the roadway and the commercial

enterprises existing thereupon, now or in the future.

3) GRANTEE shall have the right and authority to utilize the roadway for access to city utilities, and to provide reasonable access to the city residences east of the roadway. Access shall be defined as a general or simple right of ingress and egress. No alterations will be allowed upon the roadway without the permission of the GRANTOR, and any private crossing adjoining the roadway must meet the grade of the roadway. No additional crossings or driveways may connect to the roadway without the prior consent and approval of GRANTOR. Access may be impeded from time to time due to truck traffic, accidents, road improvement projects or other reasonable and legitimate commercial purposes or natural occurrences. GRANTOR will not unreasonably delay or hinder the ingress and egress rights herein. If, under the control of GRANTOR, any portion of the roadway has to be closed, alternative routes will be provided. Any temporary closure will ordinarily not exceed 24 hours.

4) GRANTOR and GRANTEE agree that it is not the intention herein to create a public street, but rather to provide the GRANTEE the limited right to ingress and egress over and across the property in a manner which will not impede the progress, safety or operation of the commercial enterprises privately located thereupon.

5) All rights and obligations herein shall inure to the assigns of the GRANTOR. The GRANTEE shall have no authority or right to assign the rights and obligations herein to any private party, entity, governmental agency, or any other, without the prior consent of the GRANTOR. Nothing herein shall be construed to create private real property rights in any party other than the GRANTEE and GRANTOR. This shall constitute the entire agreement of the parties.

[¶ 4] In June 2003, Slominski, on behalf of Minto Grain, applied for a building permit from the City to construct temporary grain storage structures on his property, including Kilowatt Drive, at an estimated cost of $9,696. On June 24, 2003, the Minto Planning and Zoning Committee met to consider the application. Melvin Tibert and Suzi Tibert appeared to oppose the application. The Committee approved the application and forwarded it to the Minto City Council for its consideration. No minutes were kept of the Committee's meeting. On July 7, 2003, the City Council met and considered Minto Grain's application. Melvin Tibert and Mark Tibert appeared to oppose the application. Following discussion, the City Council approved the application, allowing Minto Grain to:

> Construct temporary grain storage units. Metal rings w/dirt floors & tarp roofs. May construct up to 3 units. Stay 4' from property lines and abide by all court rulings.

[¶ 5] On July 9, 2003, Suzi Tibert sent a letter to the chairman of the Planning and Zoning Committee requesting a copy of the minutes of its June 24, 2003, meeting. She received only a copy of the application for the building permit and proceeded to request an Attorney General's opinion under N.D.C.C. § 44–04–21.1, asking whether the Committee violated N.D.C.C. § 44–04–21 by not taking proper minutes of its meeting. The Tiberts then appealed the City Council's decision approving the building permit to district court. On November 3, 2003, the Attorney General issued an open records and meetings opinion declaring that the Com-

mittee "violated N.D.C.C. § 44–04–21(2) by failing to take minutes of the June 24, 2003, meeting," and ordering the Committee to "create minutes" of the meeting and provide Suzi Tibert copies of the minutes "within seven days of the date this opinion is issued." N.D. Op. Atty. Gen. 2003–O–18. The Committee timely complied with the Attorney General's order. On September 20, 2005, the district court affirmed the City Council's decision to grant the building permit to Minto Grain.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 28–34–01. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01, 28–27–02, and 28–34–01.

## II

[¶ 7] The Tiberts argue that the City Council erred in granting Minto Grain's application for a building permit.

[¶ 8] In an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's review and is very limited. *Pic v. City of Grafton,* 1998 ND 202, ¶¶ 6, 8, 586 N.W.2d 159. Our function is to independently determine the propriety of the decision, without according any special deference to the district court's decision, and unless the local governing body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. *Graber v. Logan County Water Res. Bd.,* 1999 ND 168, ¶ 7, 598 N.W.2d 846. A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.

*Klindt v. Pembina County Water Res. Bd.,* 2005 ND 106, ¶ 12, 697 N.W.2d 339.

[¶ 9] The Tiberts essentially contend that the City Council acted arbitrarily, capriciously, and unreasonably in granting the building permit because it allows Minto Grain to build the structures on Kilowatt Drive in violation of the October 30, 2002, easement granted to the City of Minto. The Tiberts' argument ignores the plain language of the easement.

[¶ 10] The easement grants the City of Minto "a right of ingress and egress over and across" Kilowatt Drive and the right and authority "to provide reasonable access to the city residences east of the roadway." "Access" is defined in the document "as a general or simple right of ingress and egress." The terms "ingress" and "egress" express the right "to enter, leave, and reenter the land in question." *Black's Law Dictionary* 798 (8th ed. 2004). Under the easement, if there is no interference with the right of ingress and egress, Minto Grain is allowed to build structures that encroach upon Kilowatt Drive. *See generally Burleigh County Water Res. Dist. v. Burleigh County,* 510 N.W.2d 624, 628 (N.D.1994) ("The public's easement is limited to the right to travel, and does not include an absolute right to an object-free zone for the complete length and width of the section line."); *Hjelle v. J.C. Snyder & Sons,* 133 N.W.2d 625, 630 (N.D.1965) ("The mere showing that the light post and fence were situated on the highway right of way is not proof that they obstructed or injured the highway right of way."). Moreover, the easement specifically allows Minto Grain to impede access "from time to time due to … legitimate commercial purposes" so long as it does "not unreasonably delay or hinder the ingress and egress rights herein."

[¶ 11] Although the record reflects that temporary grain storage units will either be built upon or encroach upon Kilowatt Drive, the Tiberts have pointed to no evidence that the City's "general or simple right of ingress and egress" will be impeded by Minto Grain's proposed structures. At the June 24, 2003, meeting of the Planning and Zoning Committee, Slominski stated: "Bottom line is, the easement with the City says access will not be denied to their property and if their [sic] isn't enough room for a road there, there won't be a bin. Simple as that." In response to a question about one of the structures being 105 feet in diameter, Slominski similarly assured the City Council members at the July 7, 2003, hearing that ingress and egress would not be impeded: "Trucks will still go by, cars will still go by if it's 105 feet wide. Whatever is necessary to facilitate ingress, egress, and provide for traffic." The Council approved the building permit subject to the following restrictions: "Stay 4' from property lines and abide by all court rulings."

[¶ 12] Upon our review of the record, we conclude that the City Council's approval of Minto Grain's building permit is not arbitrary, capricious, or unreasonable, and is supported by substantial evidence.

### III

■ [¶ 13] The Tiberts argue the City Council erred in granting the building permit because the Planning and Zoning Committee failed to prepare written minutes of its meeting prior to the Council's consideration of the application. The Tiberts do not argue that the Committee's violation of the open meetings and records law voided the proceedings. *See In re Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24*, 365 N.W.2d 514, 519 (N.D.1985) (failure of a county committee to take a recorded roll call vote on an annexation petition in violation of N.D.C.C. § 44–04–21 was "not an adequate reason for the State Board to deny an annexation petition or to remand the matter to the county committee for rehearing"). Rather, the Tiberts assert the Committee's failure to prepare the written minutes for the benefit of the Council members before the Council acted on the application renders the Council's approval arbitrary, capricious, and unreasonable.

[¶ 14] With respect to Minto Grain's application for a building permit, the Committee's minutes subsequently prepared in response to the Attorney General's order state:

> Minto Grain, LLC applied to build temporary grain storage. After a lengthy discussion and several comments and questions from the board and comments from those attending the meeting, there was a motion and second to approve. The vote was 5 in favor and 1 abstaining (Dvorak).

The Tiberts do not contend that the Committee's subsequently prepared written minutes fail to comply with N.D.C.C. § 44–04–21(2) or with the Attorney General's order.

[¶ 15] The record establishes that the availability of the Committee's written minutes could not have affected the Council's consideration of Minto Grain's building permit application. At the beginning of the July 7, 2003, meeting, Council member Nellie Shutt, who is also a member of the Planning and Zoning Committee and attended its June 24, 2003, meeting, informed the other Council members of the Committee's approval of the permit. The Council was obviously aware that the Committee had approved the application, which is essentially the only information the written minutes convey. We conclude the absence of the written minutes did not ren-

der the Council's decision on the building permit application arbitrary, capricious, or unreasonable.

## IV

[¶ 16]   We affirm the district court's order.

[¶ 17] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., and JAMES M. BEKKEN, District Judge, concur.

[¶ 18]   The Honorable JAMES M. BEKKEN, District Judge, sitting in place of CROTHERS, J., disqualified.