2010 ND 32

**Donald HAGEROTT and Mark Hagerott, Appellants**

v.

**MORTON COUNTY BOARD OF COMMISSIONERS, Appellee.**

No. 20090180.

Supreme Court of North Dakota.

Feb. 22, 2010.

Tami Lyn Norgard, Fargo, N.D., for appellants.

Randall Joseph Bakke (argued) and David Ray Phillips (on brief), Bismarck, N.D., for appellee.

MARING, Justice.

[¶ 1] Donald and Mark Hagerott appeal from a district court order affirming a decision by the Morton County Board of Commissioners to issue Fred Berger a conditional use permit to operate a feedlot on Berger's property in Morton County. The Hagerotts argue they have standing to challenge the conditional use permit, the Morton County Commission's interpretation of a Morton County Animal Feeding Operation ordinance and issuance of the conditional use permit are arbitrary, capricious, and unreasonable, and the Commission's issuance of the conditional use permit constitutes a taking of property without just compensation. We hold Donald Hagerott has standing to challenge the conditional use permit and the Commission's decision to issue the conditional use permit was not arbitrary, capricious, or unreasonable. We affirm.

I

[¶ 2] On May 20, 2008, Berger applied to the Morton County Commission for a conditional use permit to relocate an existing feeding operation for 985 head of cattle, which was located approximately one and one half miles west of Mandan, to a proposed site about ten miles west of Mandan in an area zoned for agricultural use. Berger's application sought a conditional use permit for 10,000 animal units. Berger's application included a copy of an application to the North Dakota Department of Health for approval of a livestock waste system and a copy of a road comment form for the Morton County Road Department. A Morton County Animal Feeding Operation ordinance for special uses in an agricultural district included an odor setback that prohibited Berger from operating a new feedlot within one mile of an "existing residence," and Berger's application stated there were no existing residences within one mile of his proposed feedlot.

[¶ 3] On May 1, 2008, however, Donald Hagerott had applied for a building permit

to build a new house on his property, which was within one mile of the site of Berger's proposed feedlot, and the Morton County Building Department issued him a building permit. Donald Hagerott's building permit said it was "null & void if construction as authorized is not started within 180 days or if construction is suspended for a period of 180 days after construction is started." According to Donald Hagerott, the building permit was for a home for his son, Mark Hagerott, and a mobile home was moved on the land pending construction of the house, an address was obtained for postal and emergency services at the house, a septic permit was obtained, and a road approach permit was obtained and preliminary grading was done for an approach and an access road to the intended building site. The Hagerotts claim they delayed any further investment in the home pending resolution of Berger's application for a conditional use permit for the feedlot.

[¶ 4] After a June 26, 2008, public hearing, the Morton County Planning and Zoning Commission recommended the Morton County Commission approve Berger's conditional use permit for 8,000 animal units, conditioned on Berger meeting "all EPA, State Health Department, [and] State Agricultural Department requirements" and satisfying the Morton County Commission's requests for road improvements.

[¶ 5] At a regularly scheduled meeting on July 1, 2008, the Morton County Commission considered the Planning and Zoning Commission's recommendation, heard public comment about Berger's application for a conditional use permit, and tabled discussion on the application. Following further discussion at a special meeting on July 17, 2008, the Morton County Commis-

sion approved Berger's application for a conditional use permit by a vote of three to two. The Commission, through the county auditor, issued a letter to Berger on August 8, 2008, approving his application for a conditional use permit to operate a feedlot for 8,000 animal units on his property subject to requirements that: (1) he must obtain a State Health Department permit for an 8,000 unit feeding operation and put the feedlot into operation within twenty-four months; (2) he must comply with recommendations of the Morton County Road Department; and (3) he must comply with EPA requirements and other environmental standards for an 8,000 unit animal feeding operation.

[¶ 6] The Hagerotts appealed to the district court, which affirmed the Morton County Commission's decision. The district court decided Mark Hagerott was not an "aggrieved" person and lacked standing to appeal the decision, because he had no property interest affected by the decision. The court decided Donald Hagerott was not an "aggrieved" person and lacked standing to appeal the decision, because the proposed residence was for Mark Hagerott. The court nevertheless considered the merits of the Hagerotts' appeal and decided the Morton County Commission's determination there was no existing residence within one mile of the proposed feedlot was not arbitrary, capricious, or unreasonable. The court also decided that, in the absence of detrimental reliance, the Hagerotts did not have a vested right to construct their intended residence within one mile of the proposed feedlot based on the mere issuance of the building permit and that the Hagerotts failed to establish detrimental reliance. The court further decided the Morton County Commission considered all pertinent factors for a conditional use permit even though it did

not issue written findings. The court also decided the Hagerotts' claim of a taking without just compensation was not properly before the court in the context of an appeal from the Morton County Commission's decision to issue the conditional use permit.

## II

[¶ 7] For appeals from county commission determinations, this Court's decisions make clear that the principle of separation of powers precludes parties from relitigating the correctness and propriety of the county commission's decision and prevents a reviewing court from sitting as a super board and redeciding issues that were decided in the first instance by the county commission. *E.g., Pulkrabek v. Morton County*, 389 N.W.2d 609, 612–13 (N.D.1986) (citing *Shaw v. Burleigh County*, 286 N.W.2d 792, 796–97 (N.D. 1979)). We recently described that limited and deferential standard of review of decisions by local governing bodies:

"When considering an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. *Tibert v. City of Minto*, 2006 ND 189, ¶ 8, 720 N.W.2d 921 (citing *Pic v. City of Grafton*, 1998 ND 202, ¶¶ 6, 8, 586 N.W.2d 159). This Court's function is to independently determine the propriety of the [Commission's] decision without giving special deference to the district court decision. *Tibert*, at ¶ 8. The [Commission's] decision must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision. *Id.* (citing *Graber v. Logan County Water Res. Bd.*, 1999 ND 168, ¶ 7, 598 N.W.2d

846). 'A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.' *Tibert*, at ¶ 8 (citing *Klindt v. Pembina County Water Res. Bd.*, 2005 ND 106, ¶ 12, 697 N.W.2d 339). 'We fully review the interpretation of an ordinance, and a governing body's failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct.' *City of Fargo v. Ness*, 551 N.W.2d 790, 792 (N.D.1996) (citing *Gullickson v. Stark County Comm'rs*, 474 N.W.2d 890, 892 (N.D.1991))."

*Gowan v. Ward County Comm'n*, 2009 ND 72, ¶ 5, 764 N.W.2d 425, *cert. denied*, —— U.S. ——, 130 S.Ct. 288, 175 L.Ed.2d 135 (2009) (quoting *Hentz v. Elma Twp. Bd. of Supervisors*, 2007 ND 19, ¶ 4, 727 N.W.2d 276).

## III

[¶ 8] The Hagerotts argue the district court erred in deciding they lacked standing to appeal the Morton County Commission's decision.

[¶ 9] Standing is a question of law, which we review do novo. *Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 12, 676 N.W.2d 752. Under N.D.C.C. § 11–33–12, any person "aggrieved" by a county commission's decision under N.D.C.C. ch. 11–33 may appeal to the district court as provided by N.D.C.C. § 28–34–01. Under a similar statute authorizing an appeal from any county commission's decision by an "aggrieved" person, this Court said the person seeking to appeal must show a "personal, individual interest in the decision, and any

grievance which he might have suffered simply because he is an elector and taxpayer is not sufficient to give him the right to appeal." *Huber v. Miller*, 101 N.W.2d 136, 140 (N.D.1960). We said a resident taxpayer's "mere dissatisfaction or displeasure" with a county commission's decision for locating a road was insufficient to authorize the taxpayer to appeal from the decision. *Id.* We explained the person "must have some legal interest that may be enlarged or diminished by the decision to be appealed from. In other words, such party must be injuriously affected by the decision." *Id. See Cathay Special Sch. Dist. v. Wells County*, 118 N.W.2d 720, 722–23 (N.D.1962) (school district losing territory in annexation proceeding has special interest to enable it to appeal county commission annexation decision as "person aggrieved" under N.D.C.C. § 11–11–39). In another context under N.D.C.C. ch. 28–32, this Court said a party who is factually aggrieved by a decision, as indicated by the circumstances of the particular case, has standing to appeal a decision by an administrative agency. *Washburn Pub. Sch. Dist. v. State Bd. of Pub. Sch. Educ.*, 338 N.W.2d 664, 666–68 (N.D.1983). We said a person is factually aggrieved if the decision enlarges or diminishes that person's interest. *Id.* at 667.

■ [¶ 10] The Morton County Commission does not dispute that Donald Hagerott is the owner of land and the recipient of a permit to build a house on his land within the one mile odor setback of Berger's proposed feedlot. Donald Hagerott is more than just an elector and resident taxpayer affected by the Morton County Commission's decision. Rather, the Commission's decision to grant a conditional use permit for a feedlot within the one mile odor setback of the proposed house has the effect of diminishing and injuriously affecting his personal and individual interest in his land in a manner different than that suffered by the public generally. Moreover, merely because Donald Hagerott's current residence is not within the setback does not defeat standing, and it cannot be seriously argued that a proposed feedlot within the odor setback will not adversely effect Donald Hagerott's use and enjoyment of his property for a proposed house. Donald Hagerott has been factually aggrieved by the decision to permit a feedlot within one mile of the proposed construction site for the house on his land. We therefore conclude Donald Hagerott has been aggrieved by the Morton County Commission's decision and has standing to appeal the decision. Because Donald Hagerott's standing is sufficient to require consideration of the merits of this appeal, we need not consider whether Mark Hagerott has standing to appeal the decision.

IV

■ [¶ 11] The Hagerotts argue the Morton County Commission's decision to grant Berger the conditional use permit is incompatible with their valid building permit and their right to build a house on Donald Hagerott's land. They contend the Morton County Commission's interpretation of the Animal Feeding Operation ordinance and decision to grant Berger a conditional use permit were arbitrary, capricious, and unreasonable, because the Hagerotts' prior procurement of a valid building permit and their improvements to the property constitute an "existing residence" within one mile of the proposed feedlot. They assert "existing" does not mean existing when the feedlot ordinance was adopted in 2003 and it is irrelevant under the ordinance whether their residence is currently occupied or a legal residence.

[¶ 12]   Under the Morton County Animal Feeding Operation ordinance, the *"operator* of a new *animal feeding operation* shall locate the site of that operation from [an] existing residence . . . so as to exceed the . . . setback" of one mile for an operation of more than 5,001 animal units.   This case requires consideration of the meaning of the ordinance and the Morton County Commission's application of the ordinance, specifically the language precluding a new feedlot within one mile of an "existing residence."

[¶ 13]   The interpretation of a zoning ordinance is governed by the rules of statutory construction.   *Hentz,* 2007 ND 19, ¶ 9, 727 N.W.2d 276;   *Pulkrabek,* 389 N.W.2d at 614.   The interpretation of an ordinance, like the interpretation of a statute, is a question of law subject to full review on appeal.   *Hentz,* at ¶ 9. In construing an ordinance, we ascertain the enacting body's intent by giving the language its plain, ordinary, and commonly understood meaning.   *Hentz,* at ¶ 9; *Pulkrabek,* at 614–15.   When the language of an ordinance is free and clear of all ambiguity, the letter of the ordinance cannot be disregarded under the pretext of pursuing its spirit.   *Hentz,* at ¶ 9. We construe ordinances as a whole and harmonize them to give meaning to related provisions.   *Id.* We will ordinarily defer to a reasonable interpretation of a statute by the agency enforcing it, but an interpretation that contradicts clear and unambiguous language is not reasonable.   *Lee v. North Dakota Workers Comp. Bureau,* 1998 ND 218, ¶ 11, 587 N.W.2d 423.   *See Pulkrabek,* at 615.   The interpretation of a zoning ordinance by a governmental entity is a quasi-judicial act, and a reviewing court should give deference to the judgment and interpretation of the governing body rather than substitute its judgment for that of the enacting body.   *Pulkrabek,* at 615.

[¶ 14]   In approving Berger's conditional use permit, the Morton County Commission effectively decided the Hagerotts did not have an "existing residence" within one mile of Berger's proposed feedlot.   *See Pulkrabek,* 389 N.W.2d at 615 (stating implication of county commission's decision to deny building permit was that road was "rural road" within meaning of ordinance). One commonly understood meaning of "residence" is "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn," "a building used as a home."   *Merriam–Webster's Collegiate Dictionary,* p. 1060 (11th ed.2005).   The plain and ordinary meaning of "exist" is "to have being in a specified place."   *Id.* at 438.   Although the Morton County Animal Feeding Operation ordinance defines "existing" as "in place and operating on the date this ordinance is effective [in 2003]," we agree with the Hagerotts that definition does not apply to the phrase "existing residence," because "existing" is not italicized for the setback but is italicized in other instances in the ordinance when "existing" means in place and operating in 2003. Moreover, discussion at the Commission's meetings reflects that definition of "existing" in the ordinance was not used to evaluate whether there was an existing residence on Donald Hagerott's property.   Two commissioners who voted for the conditional use permit explicitly stated that they did not interpret "existing" to mean in place in 2003, and the other commissioner who voted for the conditional use permit stated that he did not believe the mobile home fit the definition of an existing residence.

[¶ 15]   The record reflects the Morton County Commission extensively consid-

ered and discussed whether there was an existing residence within one mile of the location of the proposed feedlot, and the Commission's application of "existing residence" is consistent with the commonly understood meanings of "exist" and "residence." The Morton County Commission heard statements about the Hagerotts' work on the land, saw photographs of the area, and heard statements there was a mobile home on the land but there was no electrical, water, or other services hooked up to the mobile home and it had never been occupied. One commissioner stated that he believed the mobile home was a "blocking measure" to stop Berger's application for the conditional use permit. Each case must be decided on its own factual circumstances, and contrary to the Hagerotts' argument, this is not a case in which they had completed 90 percent of the house for which the building permit was obtained.

[¶ 16] We reject the Hagerotts' arguments that their "under-construction residence constituted an 'existing residence'" under the ordinance, or that the previously issued building permit necessarily gives them an unfettered right to develop their property. The issue before the Morton County Commission was whether there was an "existing residence" within one mile of the proposed site of the feedlot. Building permits require several inspections once construction begins, including footing, foundation, structural or framing, plumbing, electrical, and final inspections. Moreover, the building permit says the "property owner is responsible to meet all of the setback requirements per zoning or plat regulations" before construction and that footing inspections require consideration of setbacks. The record reflects there had been no inspections of the Hagerotts' proposed house before the Morton

County Commission issued the conditional use permit to Berger.

[¶ 17] In an analogous context, this Court has recognized that the issuance of a permit or license, in the absence of substantial detrimental reliance, does not create an unconditional right. *See Fargo Beverage Co. v. City of Fargo*, 459 N.W.2d 770, 775–76 (N.D.1990); *City of Fargo v. Harwood Twp.*, 256 N.W.2d 694, 700 (N.D. 1977). *See also* 83 Am.Jur.2d *Zoning and Planning* § 576 (2003) (issuance of permit is not sufficient by itself to establish right to use purportedly authorized by permit unless holder has made substantial expenditures or substantially changed position). Although those cases did not involve building permits, we believe they provide guidance in assessing the effect of the Hagerotts' building permit. In *City of Fargo*, 256 N.W.2d at 700, this Court recognized the general rule that a landowner who merely plans to use his property in a certain way at some time in the future has no protection against zoning changes prohibiting that use, but a landowner who has made substantial expenditures in reliance upon existing zoning, or otherwise committed himself to his substantial disadvantage before the zoning changes may be protected. In *Fargo Beverage Co.*, 459 N.W.2d at 775–76, this Court said a liquor license is subject to changing regulations or legislative cancellation unless a landowner has made substantial expenditures in reliance on a zoning ordinance.

[¶ 18] Here, for the same reason that the Hagerotts' preparatory work on their proposed house is not an "existing residence," they have not demonstrated they have made substantial expenditures in reliance upon their building permit. Rather, the Morton County Commission was justified in deciding the Hagerotts' preparatory

efforts were not an "existing residence" or constitute substantial detrimental reliance. We conclude the Morton County Commission's decision there was no existing residence within one mile of the proposed feedlot within the meaning of the Morton County Animal Feeding Operation ordinance was part of a reasoned discussion and mental process for the purposes of achieving a reasoned and reasonable interpretation. We hold the decision was not arbitrary, capricious, or unreasonable.

[¶ 19] The Hagerotts also argue the Morton County Commission failed to make required findings before granting the conditional use permit. The Morton County ordinance for the special use of an animal feeding operation in an agricultural zoning district states that before approving the special use, the Morton County Commission shall find:

- The proposed use will not adversely affect the health and safety of the public and the workers and residents, or farming in the area, and will not be detrimental to the use or development of adjacent properties or of the general neighborhood.
- The proposed use will comply with and [sic] special conditions necessary for maintaining the general welfare or the public.

[¶ 20] At the public meetings before the Morton County Commission, Dennis Fewless, a representative from the State Health Department, described the Health Department's role in permits for feedlots. According to Fewless, the Health Department reviews the engineering design, plans, and specifications for feedlots to determine if they meet the Health Department's criteria and the Health Department thereafter has a public hearing before issu-

ing a permit for the facility. The Commission discussed issues about water quality and the Health Department's role in water quality issues. The Commission heard statements from Brian Markegard, an engineer retained by Berger, who discussed the layout for Berger's proposed facility and its specifications and described the best management practices for feedlot facilities in coordination with the State Health Department and the EPA. Markegard discussed issues about controlling waste management, odors, and contamination, and stated the plan for Berger's feedlot, with annual inspections, would meet or exceed all Health Department guidelines. The Commission also heard statements from another feedlot operator about the Health Department's process for assessing and monitoring feedlot permits. The Commission discussed the impact of the feedlot on county roads and a county employee stated the feedlot would not require extra money out of the road department budget. A representative from the State Department of Agriculture told the Commission about the economic benefits of feedlots for North Dakota. The record reflects the Commission also heard statements from several people favoring Berger's permit and from several people opposing the permit. The Commission heard conflicting statements about the benefits and detriments of the proposed feedlot. There were serious disagreements between the individuals appearing before the Commission about whether the feedlot was appropriate for the area, and the Commission considered all statements and arguments in reaching its decision to grant Berger a conditional use permit.

[¶ 21] The Hagerotts have cited no other authority requiring the Morton County Commission to make written findings of fact for a conditional use permit, and we

have found none. *See* N.D.C.C. § 11–33–01 ("The board of county commissioners and a county zoning commission shall state the grounds upon which any request for a zoning amendment or variance is approved or disapproved, and written findings upon which the decision is based must be included within the records of the board or commission."). Nevertheless, the Commission's written conditions for the conditional use permit reflect consideration of the issues required by the Morton County ordinance. Those conditions required Berger to obtain a State Health Department permit for an 8,000 animal unit facility and put the feedlot into operation within twenty-four months, to comply with the recommendations of the Morton County Road Department, and to comply with EPA requirements and other environmental standards for an 8,000 unit operation.

[¶ 22] The record and the written permit demonstrate the Morton County Commission considered the appropriate factors, and under this Court's deferential standard of review, we conclude the Commission's decision is supported by substantial evidence and is not arbitrary, capricious, or unreasonable.

V

[¶ 23] Hagerotts argue that if the Morton County Commission's issuance of a conditional use permit to Berger was not arbitrary, capricious, or unreasonable, the decision results in an unconstitutional taking of property without just compensation.

[¶ 24] This is an appeal from a county commission decision under N.D.C.C. §§ 11–33–12 and 28–34–01 and is not an inverse condemnation action. In *Gowan,*

2009 ND 72, ¶ 11, 764 N.W.2d 425, a landowner argued a county commission's decision to deny his request to change the zoning of his land from agricultural to residential in the context of an appeal from a county commission's decision resulted in an unconstitutional taking of his property without just compensation. We declined to address the landowner's argument, stating he could not turn his "appeal into an inverse condemnation action." *Id.* Under the rationale of *Gowan,* we conclude the Hagerotts cannot turn the appeal from the Morton County Commission's decision into an inverse condemnation action, and we therefore decline to address the inverse condemnation claim.

VI

[¶ 25] We affirm the district court order affirming the Morton County Commission's decision.

[¶ 26] GERALD W. VANDE WALLE, C.J., WADE L. WEBB, D.J., DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

[¶ 27] The Honorable WADE L. WEBB, D.J., sitting in place of KAPSNER, J., disqualified.