2012 ND 114

**DAKOTA RESOURCE COUNCIL,**
Appellant and Cross–
Appellee,

and

**Neighbors United, Myron and Nancy Eberts, Neil and Laura Tangen, Brittany Huggins, and Frank and Lucy Hurt,**

v.

**STARK COUNTY BOARD OF COUNTY COMMISSIONERS and Great Northern Project Development, Appellees and Cross–Appellants.**

No. 20110172.

Supreme Court of North Dakota.

June 7, 2012.

Derrick Lance Braaten (argued) and Lindsey Nieuwsma (appeared), Bismarck, N.D., for appellant and cross-appellee.

Mitchell D. Armstrong, Bismarck, N.D., for appellee and cross-appellant Stark County Board of County Commissioners.

Amy Lynn De Kok (argued) and Lawrence Bender (on brief), Bismarck, N.D., for appellee and cross-appellant Great Northern Project Development.

MARING, Justice.

[¶ 1] Dakota Resource Council ("the Council") appeals from a district court judgment affirming the decision of the Stark County Board of County Commissioners ("the Board") which approved a zoning change for certain land from agricultural to industrial and authorized nine conditional uses for the property. The Board and Great Northern Project Development ("Great Northern") cross-appealed. We affirm, concluding the Council had standing to appeal the Board's decision and the Board did not misinterpret or misapply its zoning ordinance.

I

[¶ 2] Great Northern planned to construct and operate a coal gasification facility on a tract of land in Stark County. Great Northern's planned 8,100 acre complex would include a coal gasification plant, chemical fertilizer plant, electrical power plant, coal mine, solid waste landfill, and facilities for manufacture and storage of hazardous, explosive, and odorous products. Great Northern submitted an application to the Stark County Zoning Commission ("the Commission") to change the zoning of the land from agricultural to industrial and to allow nine conditional uses of the land, including "[m]ineral and other substance exploration or excavation and mining [in] accordance with provisions of Sec. 6.10" of the Stark County Zoning Ordinance. The Commission scheduled a hearing on the application and, as required by the Zoning Ordinance, sent notice of the hearing by certified mail to all persons who owned land within 200 feet of the boundaries of the proposed rezoned tract. Following the hearing, the Commission voted to recommend that the Board approve the application, conditioned upon Great Northern obtaining all necessary local, state, and federal permits or approvals. The Board subsequently approved the application to rezone the property from agricultural to industrial and approved the requested conditional uses. The Board's approval was subject to several express conditions, including a requirement that Great Northern "obtain all the necessary local, state and federal approvals, licenses and permits relative to the operation of the coal mine."

[¶ 3] The Council, Neighbors United, and several individuals who owned land near the rezoned tract appealed the Board's decision to the district court under N.D.C.C. §§ 11–33–12 and 28–34–01. The Council is a membership-based non-profit corporation which, among other things, works for preservation of family farms, regulation of coal mining and oil and gas development, protection of ground water and clean air, and sound management of solid and toxic wastes. Neighbors United is an unincorporated association which promotes the protection of farming and ranching. The district court initially determined that the Council, Neighbors United, and the individual landowners had standing to challenge the Board's decision, but the dis-

trict court affirmed on the merits the Board's decision to rezone the property and allow the conditional uses.

## II

[¶ 4] In their cross-appeal, the Board and Great Northern contend the Council lacked standing to appeal the Board's decision to the district court.[1]

[¶ 5] Standing is a question of law which is reviewed de novo on appeal. *State ex rel. Schlect v. Wolff*, 2011 ND 164, ¶ 16, 801 N.W.2d 694; *First Int'l Bank & Trust v. Peterson*, 2011 ND 87, ¶ 9, 797 N.W.2d 316. As this Court explained in *Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau*, 2004 ND 60, ¶ 11, 676 N.W.2d 752 (quoting *Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, ¶ 8, 585 N.W.2d 811) (citation omitted):

> A party is entitled to have a court decide the merits of a dispute only after demonstrating the party has standing to litigate the issues placed before the court. Standing is the concept used " 'to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court.' " *Billey v. North Dakota Stockmen's Ass'n*, 1998 ND 120, ¶ 7, 579 N.W.2d 171 (quoting *Black's Law Dictionary* 1405 (6th ed.1990)). A person cannot invoke the jurisdiction of the court to enforce private rights or maintain a civil action for the enforcement of those rights unless the person has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.

Because courts do not render advisory opinions or decide purely abstract questions, parties seeking relief from a court must demonstrate they have standing by alleging such a personal stake in the outcome of a controversy to justify the court's exercise of remedial powers on their behalf. *Peterson*, at ¶ 9; *Ackre v. Chapman & Chapman, P.C.*, 2010 ND 167, ¶ 11, 788 N.W.2d 344.

[¶ 6] The Council contends it has associational standing because it is representing the interests of some of its members who would have individual standing. This Court identified the elements of associational standing in *Nodak Mut.*, 2004 ND 60, ¶ 14, 676 N.W.2d 752 (quoting 9 V. Braucher, B. Jacobsthal & G. O'Gradney, *Fletcher Cyclopedia of the Law of Private Corporations* § 4227 (1999 Rev. ed.)):

> [A] nonprofit organization that has not suffered an injury itself can sue as the representative of its members if: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. In addition, a nonprofit membership corporation has standing to seek judicial review on behalf of its members, of governmental or municipal regulations directly affecting such members.

*See also Peterson*, 2011 ND 87, ¶ 12, 797 N.W.2d 316.

[¶ 7] The Board and Great Northern contest only the first element of the three-prong test for associational standing, arguing the record does not establish that any of the Council's members had standing to sue in their own right. In order to satisfy the first prong, the association must demonstrate that "at least some of its mem-

---

1. Because Neighbors United and the individual landowners who appealed the Board's decision to the district court have not appealed to this Court, we do not address whether they had standing. Only the Council's standing is at issue on this appeal.

bers would have standing to bring the action in their own right." *Peterson,* 2011 ND 87, ¶ 13, 797 N.W.2d 316. Therefore, the critical question in this case is whether any of the Council's identified members would have had standing to appeal the Board's decision.

[¶ 8] Under N.D.C.C. § 11–33–12, any person "aggrieved" by a zoning decision of a board of county commissioners may appeal to the district court. To assist in interpreting N.D.C.C. § 11–33–12, we have considered cases construing similar statutes authorizing appeals by an "aggrieved" person:

> Under a similar statute authorizing an appeal from any county commission's decision by an "aggrieved" person, this Court said the person seeking to appeal must show a "personal, individual interest in the decision, and any grievance which he might have suffered simply because he is an elector and taxpayer is not sufficient to give him the right to appeal." *Huber v. Miller,* 101 N.W.2d 136, 140 (N.D.1960). We said a resident taxpayer's "mere dissatisfaction or displeasure" with a county commission's decision for locating a road was insufficient to authorize the taxpayer to appeal from the decision. *Id.* We explained the person "must have some legal interest that may be enlarged or diminished by the decision to be appealed from. In other words, such party must be injuriously affected by the decision." *Id. See Cathay Special Sch. Dist. v. Wells County,* 118 N.W.2d 720, 722–23 (N.D.1962) (school district losing territory in annexation proceeding has special interest to enable it to appeal county commission annexation decision as "person aggrieved" under N.D.C.C. § 11–11–39). In another context under N.D.C.C. ch. 28–32, this Court said a party who is factually aggrieved by a decision, as indicated by the circumstances of the par-

ticular case, has standing to appeal a decision by an administrative agency. *Washburn Pub. Sch. Dist. v. State Bd. of Pub. Sch. Educ.,* 338 N.W.2d 664, 666–68 (N.D.1983). We said a person is factually aggrieved if the decision enlarges or diminishes that person's interest. *Id.* at 667.

*Hagerott v. Morton Cnty. Bd. of Comm'rs,* 2010 ND 32, ¶ 9, 778 N.W.2d 813.

[¶ 9] The result reached by the Court in *Hagerott* provides further guidance in determining whether a person has been aggrieved by a zoning decision. Hagerott had received a building permit to construct a house on his land in rural Morton County. *Id.* at ¶ 3. Shortly thereafter a neighboring landowner, Berger, applied for a conditional use permit to relocate a feedlot. *Id.* at ¶ 2. By ordinance, there was an odor setback that prohibited operation of a new feedlot within one mile of an existing residence. *Id.* Hagerott's building permit was for a site within the one-mile odor setback from Berger's proposed feedlot. *Id.* at ¶ 3. The Morton County Commission approved Berger's application, and Hagerott appealed to the district court, which affirmed the decision. On appeal to this Court, we concluded Hagerott had standing to challenge the County Commission's decision:

> The Morton County Commission does not dispute that Donald Hagerott is the owner of land and the recipient of a permit to build a house on his land within the one mile odor setback of Berger's proposed feedlot. Donald Hagerott is more than just an elector and resident taxpayer affected by the Morton County Commission's decision. Rather, the Commission's decision to grant a conditional use permit for a feedlot within the one mile odor setback of the proposed house has the effect of diminishing and injuriously affecting his

personal and individual interest in his land in a manner different than that suffered by the public generally. Morever, merely because Donald Hagerott's current residence is not within the setback does not defeat standing, and it cannot be seriously argued that a proposed feedlot within the odor setback will not adversely effect Donald Hagerott's use and enjoyment of his property for a proposed house. Donald Hagerott has been factually aggrieved by the decision to permit a feedlot within one mile of the proposed construction site for the house on his land. We therefore conclude Donald Hagerott has been aggrieved by the Morton County Commission's decision and has standing to appeal the decision.

*Id.* at ¶ 10.

[¶ 10] In this case, the Board and Great Northern contend that the Council offered only generalities and conclusory statements that its members would be affected by the Board's decision to rezone the property and permit the conditional uses, and that the Council had failed to show its members had an interest that would be directly affected by the decision. They therefore contend that none of the Council's members had standing, and accordingly the Council lacked standing.

[¶ 11] Although this case presents a close question on the issue of associational standing, we conclude that at least some of the Council's members would have had standing to appeal the Board's decision in their own right, and the Council therefore had associational standing. Section 9.05(4)(c) of the Stark County Zoning Ordinance requires that, when a proposed amendment to the Zoning Ordinance and Map affects a property use, all property owners within 200 feet of the affected property must be notified of the hearing by personal service or certified or regis-

tered mail. In this case, the record demonstrates that at least two individuals identified as the Council members, Kenneth Kudrna and Randall Kudrna, received notice of the scheduled hearing from Stark County by certified mail because they owned property within 200 feet of the proposed rezoned tract.

[¶ 12] We find it especially significant that the County requires by law that all landowners within 200 feet of the boundaries of the proposed rezoned tract be given notice of the hearing on any application for a zoning change. Section 9.05(4)(c) of the Zoning Ordinance is effectively a legislative determination that landowners within 200 feet of the proposed rezoned property have a significant, protectable interest in the Board's decision whether to grant an application to rezone the property and permit requested conditional uses. Just as the odor setback in *Hagerott* created a legally recognized protectable interest for property owners within one mile of the proposed feedlot, the notice requirement in this case created a legally recognized protectable interest for landowners within 200 feet of the rezoned property. The notice requirement established that Kenneth Kudrna and Randall Kudrna's property interests were affected by the Board's decision "in a manner different than that suffered by the public generally," and they were "more than just an elector and resident taxpayer affected by the ... decision." *Hagerott,* 2010 ND 32, ¶ 10, 778 N.W.2d 813. In addition, just as it could not "be seriously argued that a proposed feedlot within the odor setback [would] not adversely [a]ffect Donald Hagerott's use and enjoyment of his property for a proposed house," *id.,* we do not believe it can be "seriously argued" that an 8,100 acre industrial complex, including a coal gasification plant, chemical fertilizer plant, electrical power plant, coal

mine, solid waste landfill, and facilities for manufacture and storage of hazardous, explosive, and odorous products, would not adversely affect the Kudrnas' use and enjoyment of their respective properties located within 200 feet of the proposed complex.

[¶ 13] Based upon the record in this case, we conclude the Council established that at least some of its members were "aggrieved" by the Board's decision and would have had standing to appeal the decision in their own right. Accordingly, and because the Board and Great Northern did not challenge the Council's satisfaction of the two remaining requirements for associational standing, we conclude the Council had associational standing to appeal the Board's decision to the district court.

### III

[¶ 14] The Council contends that the Board failed to correctly interpret and apply the Stark County Zoning Ordinance, and that the decision of the Board must therefore be reversed.

[¶ 15] In *Hagerott*, 2010 ND 32, ¶ 7, 778 N.W.2d 813 (quoting *Gowan v. Ward Cnty. Comm'n*, 2009 ND 72, ¶ 7, 764 N.W.2d 425), we reaffirmed our "limited and deferential" standard of review of decisions by local governing bodies:

> "When considering an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. *Tibert v. City of Minto*, 2006 ND 189, ¶ 8, 720 N.W.2d 921 (citing *Pic v. City of Grafton*, 1998 ND 202, ¶¶ 6, 8, 586 N.W.2d 159). This Court's function is to independently determine the propriety of the [Commission's] decision without giving special deference to the district court decision. *Tibert*, at ¶ 8. The [Commission's] deci-

sion must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision. *Id.* (citing *Graber v. Logan County Water Res. Bd.*, 1999 ND 168, ¶ 7, 598 N.W.2d 846). 'A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.' *Tibert*, at ¶ 8 (citing *Klindt v. Pembina County Water Res. Bd.*, 2005 ND 106, ¶ 12, 697 N.W.2d 339)."

*See also Mertz v. City of Elgin*, 2011 ND 148, ¶ 3, 800 N.W.2d 710.

[¶ 16] Although interpretation of an ordinance presents a question of law fully reviewable on appeal, we will give deference to a governing body's reasonable interpretation of its own zoning ordinance:

> The interpretation of a zoning ordinance is governed by the rules of statutory construction. The interpretation of an ordinance, like the interpretation of a statute, is a question of law subject to full review on appeal. In construing an ordinance, we ascertain the enacting body's intent by giving the language its plain, ordinary, and commonly understood meaning. When the language of an ordinance is free and clear of all ambiguity, the letter of the ordinance cannot be disregarded under the pretext of pursuing its spirit. We construe ordinances as a whole and harmonize them to give meaning to related provisions. We will ordinarily defer to a reasonable interpretation of a statute by the agency enforcing it, but an interpretation that contradicts clear and unambiguous language is not reasonable. The interpretation of a zoning ordinance by a governmental entity is a quasi-judicial act, and

a reviewing court should give deference to the judgment and interpretation of the governing body rather than substitute its judgment for that of the enacting body. *Hagerott,* 2010 ND 32, ¶ 13, 778 N.W.2d 813 (citations omitted); *see also Mertz,* 2011 ND 148, ¶ 4, 800 N.W.2d 710.

■ [¶ 17] The Council contends that the Board misconstrued various provisions of the Stark County Zoning Ordinance when it granted Great Northern a conditional use permit to conduct mining operations on the rezoned property in accordance with § 6.10 of the Zoning Ordinance. Section 6.10 requires an applicant to obtain a land disturbance permit before commencing mining operations:

> Any operation involved in the search, exploration or prosperity [sic] for any substance or mineral or involved in the extraction or excavation of any mineral or material including sand, gravel or scoria shall do so only upon the granting of a land disturbance permit by the board of county commissioners.

Under § 6.10–A of the Zoning Ordinance, an applicant for a land disturbance permit for exploration, excavation, or mining of minerals must submit: written evidence of the approval of landowners; a legal description and map of the proposed operations; evidence that excavation and reclamation will take place in accordance with Public Service Commission and Industrial Commission requirements; a plan indicating type of operation, hauling routes, elevations, drainage, and reclamation plans for future use; and acceptance of responsibility to ensure health and safety of the general public through the use of sound procedures and proper barriers or fencing.

[¶ 18] The Council contends that Great Northern was required to submit all of the items listed in § 6.10–A before the Board could approve a conditional use permit for mining operations. The Council bases this assertion on § 3.04 of the Zoning Ordinance, which provides in part:

> A conditional use permit shall serve as a land disturbance permit when no buildings or structures are involved and as a building permit, when a structure or building is involved.

The Council contends that the conditional use permit in this case serves as a land disturbance permit under § 3.04, and Great Northern was therefore required to comply with § 6.10–A before receiving a conditional use permit for mining operations under § 6.10.

[¶ 19] The Board and Great Northern argue that the Council has misinterpreted the Zoning Ordinance and the extent and effect of the Board's decision to grant the application to rezone the property and approve the conditional use permits. The Board relies upon the language in § 3.04 of the Zoning Ordinance which provides that a conditional use permit will serve as a land disturbance permit only when "no buildings or structures are involved." Construing the various provisions of its own Zoning Ordinance together, the Board decided that, because Great Northern's application included various buildings and structures, the conditional use permit granted for mining operations did not serve as a land disturbance permit under § 3.04 of the Zoning Ordinance, and therefore compliance with § 6.10–A was not required at this time. Both the Board and Great Northern concede that the conditional use permit does not grant Great Northern the right to commence mining operations, and Great Northern will have to, in the future, apply for and secure a land disturbance permit, including submission of all items required by § 6.10–A, before commencing mining or extraction operations under § 6.10.

[¶ 20] The Board and Great Northern further contend that the additional conditions specified by the Board in the conditional use permit clearly demonstrated that this was merely a preliminary step in the process, and Great Northern would ultimately be required to comply with § 6.10–A and secure a land disturbance permit before commencing any exploration, excavation, or mining activities. The Board has discretion to impose specific conditions upon issuance of a conditional use permit. *See* 3 Edward H. Ziegler, Jr., *Rathkopf's Law of Zoning and Planning* § 61:49 (2005). Section 2.02(26) of the Zoning Ordinance defines a "Conditionally Permitted Use" as a use which is "not usually allowed within a particular zoning district, but which may be allowed under special conditions if it can be shown that the use would not threaten the health, safety or general welfare of neighboring residents." Similarly, § 3.04 of the Zoning Ordinance specifies that a "Conditionally Permitted Use" is "[a] use which could represent a hazard to the general health safety and welfare of the residents of Stark County and as such shall have specific stipulations or conditions assigned to ensure that problems do not occur." Thus, the Board had the authority under the Zoning Ordinance to grant the requested conditional use permits but to make them subject to specific additional conditions.

[¶ 21] In this case, the Board granted the rezoning and allowed the requested conditional uses subject to several express conditions, including:

> Great Northern Project Development shall obtain all the necessary local, state and federal approvals, licenses and permits relative to the operation of the coal mine.

The Board and Great Northern understood and intended that the requirement that Great Northern "obtain all the necessary local . . . approvals, licenses and permits relative to the operation of the coal mine" included Great Northern complying with § 6.10–A and acquiring a land disturbance permit before commencing any mining activities on the property. The Board viewed the granting of the conditional use permit as merely the first step in a lengthy and complex process, and its approval of the conditional use was contingent upon Great Northern complying with all of the enumerated special conditions imposed upon the conditional use permit. Great Northern would still have to satisfy all of the requirements imposed by state and federal law before commencing mining activities,[2] as well as the additional local requirements, including compliance with § 6.10–A and acquisition of a land disturbance permit. As aptly summarized by Great Northern in its brief on appeal:

> The Board's interpretation of its own ordinance is entitled to deference from a reviewing court. The Board determined that the grant of a conditional use permit does not satisfy Great Northern's obligation to obtain a land disturbance permit in accordance with the Stark County Zoning Ordinance. Further, when read as a whole, the ordinance makes clear that there are multiple steps in the process from rezoning to occupation of a tract of land. The requirements of Section 6.10–A will apply when Great Northern applies for a land disturbance permit. They did not apply to Great Northern's application for a conditional use permit.

[¶ 22] The Board, construing its Zoning Ordinance in light of the facts presented in

---

**2.** The parties have not argued that the Zoning Ordinance conflicts with or encroaches upon state or federal law regulating mining activi-

ties. *See, e.g.,* N.D.C.C. ch. 38–14.1; Surface Mining Control and Reclamation Act of 1977, as amended at 30 U.S.C. §§ 1201–1328.

this case, concluded that the Zoning Ordinance allowed the Board to issue a conditional use permit for mining operations, subject to the requirement that Great Northern ultimately comply with § 6.10–A and obtain a land disturbance permit before commencing any exploration, excavation, or mining activities on the property. We conclude this is a reasonable interpretation of the Zoning Ordinance, and we give deference to the Board's interpretation and will not substitute our judgment for that of the Board. *See Mertz*, 2011 ND 148, ¶ 4, 800 N.W.2d 710; *Hagerott*, 2010 ND 32, ¶ 13, 778 N.W.2d 813. Accordingly, we conclude the Board did not misinterpret or misapply the Zoning Ordinance when it granted Great Northern's application to rezone the property and allowed the requested conditional uses.

### IV

[¶ 23] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The judgment of the district court affirming the Board's decision is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.