CATHAY SPECIAL SCHOOL DISTRICT NO. 3, WELLS COUNTY, North Dakota, a political subdivision of the State of North Dakota, and Fairville School District No. 4, Wells County, North Dakota, a political subdivision of the State of North Dakota, Respondents,

v.

WELLS COUNTY, a political subdivision of the State of North Dakota, and the Board of County Commissioners of said Wells County, State of North Dakota, Appellants.

No. 8010.

Supreme Court of North Dakota.

Dec. 27, 1962.

Vincent LaQua, Fessenden, and Duffy & Haugland, Devils Lake, Of Counsel, for appellants.

Edgar P. Mattson and James H. Williams, New Rockford, for respondents.

TEIGEN, Judge.

Eight electors of Fairville School District made application to the Board of County Commissioners of Wells County for the annexation of an area comprised of a part of the territory of Fairville School District and a part of the territory of Cathay Special School District to the Fessenden Special School District. All three districts are located in Wells County, North Dakota. The territory described in the application located in Cathay Special School District is contiguous to both Fairville School District and Fessenden Special School District. It is a strip of land one mile long and about one-fourth mile wide and constitutes a joining link between Fairville and Fessenden School Districts. This narrow strip of land in Cathay School District is uninhabited. There were no electors of Cathay School District signing the application. By letters addressed to the Wells County School Reorganization Committee, persons representing themselves to be the operators and the owners of the strip of land located in Cathay Special School District advise that the annexation of this strip of land meets with their approval. The record does not disclose that either the owners or operators are electors of either Fairville or Cathay School Districts. The letters and written approvals of the plan by the County Superintendent of Schools, the County Committee on School Reorganization, and the North Dakota State Board of Public School Education were attached to the application and were filed with the County Commissioners.

The second application for annexation, also addressed to the Wells County Commissioners, was filed praying that an uninhabited quarter section of land located in Fairville School District be annexed to Cathay Special School District. The two signers of this application are designated as "owners" and it appears they are electors of Fairville School District as these petitioners also appear as signers of the petition described above. This application also was

approved by the County Superintendent of Schools, the County Committee on School Reorganization, and the North Dakota State Board of Public School Education, which approvals were attached to the application.

Both applications were filed with the Wells County Board of County Commissioners on May 2, 1961. After a notice of hearing was given, the hearing was held. Both applications were approved by the Board of County Commissioners in one resolution on June 6, 1961, by a 3–2 vote.

Fairville School District and Cathay Special School District jointly appealed the decision to the District Court of Wells County. A trial was held and the district court entered judgment declaring the applications invalid and reversed and set aside the decision of the Board of County Commissioners approving the annexations on the ground of lack of jurisdiction.

Wells County and its Board of County Commissioners have appealed from the judgment of the District Court to the Supreme Court and the matter is submitted to us for review on the merits.

There is no dispute of facts. The grounds set forth in the appeal to the district court by the two school districts are legal grounds challenging the legality of the applications for annexation and alleging that the board of county commissioners was without jurisdiction to act upon them.

The essential purpose of these annexation proceedings was to annex a portion of Fairville School District to Fessenden School District. However, because Fairville and Fessenden School Districts were not contiguous but were separated by a strip of land one mile wide, which was a part of Cathay Special School District, the applicants, who were electors in that portion of the Fairville School District that desired to annex to Fessenden School District, included in the territory described in the application a strip of uninhabited land located in Cathay Special School District which would join the Fairville School District to

the Fessenden School District for the purpose of attaining contiguity. However, this did not solve all of the problems because, if the strip of land was detached from Cathay School District in the manner proposed by the applicants, it would reduce the assessed value of Cathay School District to a point below that permitted by the statutes in view of the number of teachers employed in the Cathay Special School system; therefore, it was necessary to annex some other land to Cathay School District to balance the loss. Two of the applicants residing in Fairville School District owned a quarter section of land in Fairville School District which was not included in the territory for annexation to the Fessenden School District. This land was uninhabited and had an appraised valuation slightly higher than the strip of land which would be detached. Therefore, a second application was filed and, because the land was uninhabited, was signed by its owners. It prays the annexation of the land described to Cathay Special School District. The two applications were approved by the board of county commissioners in one resolution. The effect was to accomplish the annexation of territory located in Fairville School District to the Fessenden School District, using this narrow strip of land one mile in length and one-fourth mile wide as the connecting link between Fessenden School District and Fairville School District so that all territories would be considered contiguous. The simultaneous annexation to Cathay Special School District would keep its assessed valuation in the amount required by law.

■ The first question presented is whether Cathay and Fairville School Districts were aggrieved by the decision of the board of county commissioners entitling them to appeal from that decision to the district court. Section 11–11–39, N.D.C.C., provides in part:

"Appeal from decision of board by person aggrieved—bond.—An appeal may be taken to the district court from any

decision of the board of county commissioners by any person aggrieved thereby."

For the purpose of the argument, it is admitted that a school district may be an interested party in an annexation proceeding. The issue is presented on the argument that a school district, like any other party, must be adversely affected before it may appeal. It is claimed the appealing school districts were not adversely affected in this case and, therefore, were not aggrieved.

In support of their argument, the county and its board of commissioners point out that Cathay Special School District was not damaged in any manner. The detaching of the strip and the annexation of the quarter section resulted in slightly increasing its assessed valuation. No children were taken from the district and none were added to the burden of the district. Likewise, it argues, Fairville School District has suffered no detriment. Prior to the annexation it maintained two schools with an assessed valuation of slightly over $100,000 for each school. One of these schools is included in the territory detached, leaving it with only one school to operate and an assessed valuation of approximately $164,-000. It points out other arguments in support of its claim that the school districts were not injured. It submits that since neither of the school districts have been injured, they were not adversely affected and were in no position to maintain the appeal to the district court. They are not aggrieved parties.

The school districts, on the other hand, argue they have suffered detriment. They state that to allow the annexation to stand changes the boundary of Fairville School District, reduces its valuation and tax base, takes away from it one school still in operation which has served residents and taxpayers who are not included in the area seeking to be detached, and that the annexation will result in a complete change and adjustment in affairs of the district. Relative to Cathay Special School District, it argues annexation will result in a change of boundary and valuation and will preclude the possibility of expansion by that district to the north because of the loss of contiguity by the detachment of the narrow strip of land, referred to as the corridor or the connecting link between Fairville and Fessenden Districts, which is located at the extreme north end of Cathay District.

Fairville and Cathay School Districts, in their appeal to the district court from the decision of the county commissioners, set forth the issues in the form of a complaint. In the appeal they challenge the legality of the petitions for annexation and the jurisdiction of the county commissioners. There was no challenge as to the merits of the annexation. Cathay is a special school district and Fairville is a common school district. Both are corporate bodies organized for public purposes. They may sue and be sued. Sections 15–23–01 and 15–27–02, N.D.C.C. They own and have custody of the school property. They have a duty to establish and maintain schools within their respective districts. Through their school boards they have general charge, direction and management of the property and the schools of the district, and shall levy a tax upon the property within the district for school purposes. Sections 15–25–06 and 15–29–08, N.D.C.C., and related sections. The existence, scope and purpose, with the intended duties and obligations, of school districts within their respective boundaries, creates such a legal interest in determination of its boundaries and the problems that naturally flow therefrom which qualify them as "persons aggrieved" within the meaning of Section 11–11–39, supra.

In an action in the nature of quo warranto to test the legality of the organization of a school district out of a portion of the territory of an old district, this court said in Tallmadge v. Walker, 34 N.D. 590,

159 N.W. 71, that the directors of the old district have such a special interest as to enable them to prosecute the action in their own name. In disposing of the question, this court, in the text of the opinion, said:

"That plaintiffs, as directors of New England School District No. 9, have a special interest sufficient to enable them to prosecute the action, seems beyond question. The fact that the complaint does not expressly allege such special interest is not controlling. Facts are therein alleged from which it appears that they, as such directors, are under a legal duty (if the attempted organization of such new district was illegal) to take charge, direction, and management of the schools of the district, and the care, custody, and control of all the school property therein (Section 1173, Compiled Laws), and the fact that defendants, if acting illegally, are attempting to usurp a portion of such duties and prerogatives, is sufficient to confer upon plaintiffs such a special interest as to enable them under the Code to prosecute this action."

The Supreme Court of Wisconsin in a recent case reversed its former holding and held that a city operating under a city school plan, whereby the city is vested with the powers and interests of school districts, owns the school property, determines the budget, operates and administers the schools through a school board, was "a person aggrieved" within the meaning of a statute giving the right of appeal to persons aggrieved with respect to the action of the county school district in detaching a portion of territory from the city school district. City of Oshkosh v. Winnebago County School Committee, 9 Wis.2d 32, 100 N.W.2d 374, reversing State ex rel. Geneva School District No. 1 v. Mitchell, 210 Wis. 381, 245 N.W. 640, 86 A.L.R. 1361.

With the reasoning and conclusions of our earlier case and the Wisconsin case, we are in accord.

One of the applications for annexation describes a geographical area, a part of which is situated in Cathay Special School District and a part of which is situated in Fairville School District. The signers are all electors of the territory of the Fairville District. The territory located in Cathay District was uninhabited and, therefore, it is argued the number of signers constitutes the requisite majority for all of the area described in the application. Special written consents to the annexation, as proposed by the application signed by the owners and the operators, who are not electors of the territory in the Cathay District, are attached to the application.

■ The question thus arises whether or not the statutes quoted herein contemplate the joining of territories from adjacent school districts in one application for the purpose of having them annexed to a third district. The question also arises that if an application contains territories from two adjacent districts, may it be signed by electors from the territory of only one of the districts and may the owners and operators of the land be substituted for electors in school annexation proceedings.

Section 15–27–14, N.D.C.C., provides:

"Adjacent territory may be attached to special district for school purposes—Petition.—Territory contiguous to a special school district, whether in the same county or in another, may be attached to such special school district and detached from the district of which it is a part by the board of county commissioners upon written application signed by two-thirds of the electors of the contiguous territory after hearing and subject to the limitations contained in this chapter."

Section 15–27–15, N.D.C.C., is a related section and provides:

"Hearing by board of county commissioners—Notice of hearing.—Before

detaching territory from one school district or annexing territory to another school district, the board of county commissioners shall hold a hearing on the petition therefor. The board shall cause notice of such hearing to be given by the posting of notices thereof in three conspicuous places in each of the following: the district to which annexation is sought; the territory sought to be detached or annexed; and the district from which the territory is proposed to be detached."

Section 15–27–16, N.D.C.C., also a related section, provides:

"Limitations on power to detach and attach territory.—No territory shall be detached from one school district for annexation to a special school district if the part of the original district remaining after the proposed annexation would have an assessed valuation of less than one hundred thousand dollars for each teacher employed in the remaining territory, or less than one hundred twenty-five thousand dollars for each teacher employed in the remaining territory if the remaining territory has a graded or consolidated school with two or more teachers."

Section 15–53–21, N.D.C.C., provides that proposals for the alteration of the boundaries of established school districts must be submitted to the State Board of Public School Education for approval before the hearing is held or final action taken.

In referring to the territory to be detached, the language of all of the statutes, quoted above, is in the singular. Section 15–27–14 states "the school district" and Sections 15–27–15 and 15–27–16 states "one school district." To give interpretation to these words to include the plural will subject electors of territory from one school district to domination by the electors of territory from an adjacent district. It would permit the electors from the territory of one district to include in the application territory from an adjacent district to the extent of one-half of the electors of the territory of the first district, although all of the electors of the adjacent district were opposed to the annexation. A small but highly populated territory of one district could dominate a large sparsely populated area of an adjacent district. This would permit the electors of one district to impose their will upon electors of another district and against the will of such electors, even though they may have a very good and satisfactory school system in their district. The interpretation of words of the statute "the district" and "one school district" in the singular, as written, affords to the electors of any given territory of every school district relief from the domination of electors from territory of an adjacent school district and the power of self-determination.

When we consider the statutory provisions on annexation of territory located in a common or special school district set forth above, it becomes evident the legislature intended that electors of a school district were to be granted power of self-determination on the question of whether or not territory, in which the elector is a resident, shall be detached from the district for the purpose of allowing the same to be annexed to another district. Thus, if we construe the words "the district" and "one district" to include the plural, it would subject them to domination by electors from another district and this, we believe, would be contrary to the clear legislative intent.

There being no electors signing the application from Cathay School District, the application is void as to the Cathay territory described therein and it did not confer jurisdiction on the board of county commissioners to act. The written consents submitted by the owners and the operators of the land are ineffective for reasons hereinafter stated.

Under similar statutes, the Ohio Supreme Court held a proposed transfer of territory

in two separate school districts to another district may not be included in one petition. State ex rel. Finley v. County Board of Education of Guernsey County, 124 Ohio St. 324, 178 N.E. 313.

The next question may be stated as follows: Where no electors reside in the territory to be detached from one school district and annexed to another, may the application be signed by the owners or the operators of the land?

■ Section 15–27–14, supra, states the written application shall be signed by two-thirds of the "electors of the contiguous territory * * *." This requirement is jurisdictional. We have found no statute and none has been pointed out to us defining an elector as an owner or as an operator of land. The general rule as to qualification of voters in elections has been applied in determining the qualifications of a signer under statutes requiring that petitions be signed by qualified voters or electors. 78 C.J.S. Schools and School Districts § 37, page 704.

Under a statute authorizing territory to be detached from one school district and annexed to another on the petition of the majority of the voters in the territory, it was held in Lakeview Common School District, et al. v. County School Board of Trustees of San Saba County (Court of Civil Appeals of Texas. Austin.), 38 S.W. 2d 598, that a petition signed by the non-resident owner of unoccupied territory was ineffective.

The qualification of school electors is stated under the general provisions of the school laws, Section 15–47–05, N.D.C.C. It states in part:

"Any person who is a qualified elector under the general laws of the state is qualified to vote at the election of school officers in any school district of the state in which he is a resident, * * *."

■■ The term "elector" is a technical, generic term descriptive of a citizen having constitutional and statutory qualifications that entitle him to vote in any school district of the state of which he is a resident. Electors, who may sign applications to have the territory of a district detached and annexed to another district, are further limited by Section 15–27–14, supra, to "electors of the contiguous territory." "Contiguous territory" is the territory described in the application to be detached from the district of which it is a part. Thus only electors of the territory to be detached from one district and attached to the other are qualified signers. We hold, therefore, that under the provisions of Section 15–27–14, supra, only those citizens having a constitutional statutory right to vote in the contiguous territory of which they are residents are eligible to sign an application.

The preceding issues are decisive of the case without regard to the others raised.

■ The application for the annexation of a part of Fairville District, plus a narrow connecting strip in Cathay District to the Fessenden District, is invalid as to the territory located in the Cathay District. Omitting this territory from the application, the remaining territory described in the application located in Fairville District is not eligible for annexation to the Fessenden District because it is not contiguous to it. The petition for annexation of territory in the Fairville District to the Cathay District is invalid because the signers thereof are not qualified as electors of the territory described in the application.

For these reasons the applications were not sufficient to invoke the jurisdiction of the board of county commissioners to annex the territory described in the applications to the respective districts to which it is prayed they be annexed. Because the board of county commissioners lacked jurisdiction, the resolution approving the annexations is void and the judgment setting aside and reversing the county commis-

sioners' action of June 6, 1961, must be affirmed.

Judgment of the district court is affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.