2016 ND 91

**In the Interest of N.A., child.**

**State of North Dakota Petitioner and Appellee**

v.

**N.A., child, L.A., mother, M.P., father, and Janice Briese, Guardian ad Litem, and Executive Director of the ND Department of Human Services, Respondent**

**M.P., father, Appellant.**

**No. 20160099.**

Supreme Court of North Dakota.

May 26, 2016.

Tessa M. Vaagen, Burleigh County State's Attorney, Bismarck N.D., for petitioner and appellee.

Bradley D. Peterson, Legal Services of ND, Bismarck N.D. for appellant.

CROTHERS, Justice.

[¶1] A father appeals a juvenile court order adopting a judicial referee's decision to terminate his parental rights. The father appeals both the juvenile court order and the judicial referee's order, arguing he was denied due process of law because the guardian ad litem failed to fulfill mandatory responsibilities. The guardian ad litem's failure to interview the father did not violate his constitutional right to due process. The juvenile court order adopting the judicial referee's order and terminating the father's parental rights is affirmed.

I

[¶2] The state petitioned to terminate the father's and mother's parental rights in April 2015. The child's guardian ad litem filed a report supporting termination, stating the child had been in foster care since August 2013, the father's last contact with social services was in June 2014 and the father's whereabouts were unknown. A juvenile court order granted the state's motion to withdraw the April 2015 petition.

[¶3] The state again petitioned to terminate the father's and mother's parental rights in October 2015. The father received the petition, affidavit in support of

termination and an affidavit of mailing while incarcerated at the Richland county jail. The affidavit of mailing, which was also received by the guardian ad litem, listed the father's address at the Richland county jail. The guardian ad litem filed a nearly identical report supporting termination, listing the father's whereabouts as unknown and his last contact with social services as June 2014. The amended report stated the mother was voluntarily terminating her parental rights. The court mailed the report to the father at the Richland county jail.

[¶ 4] A trial was held in January 2016. The guardian ad litem and the father both were present. The father testified he did not contact the child from June 2014 until sometime after July 2015. The guardian ad litem offered her view that the father's parental rights should be terminated. The guardian ad litem made her statement to the court at the judicial referee's request. The guardian ad litem was neither sworn nor subject to cross examination; however, no party objected to any claimed irregularity in the proceeding. The judicial referee "considered the written and in-court report of the guardian ad litem and ... arguments of counsel" and terminated the father's parental rights.

[¶ 5] The father requested juvenile court review, arguing his constitutional right to due process was violated because the guardian ad litem failed to interview him. The juvenile court adopted the referee's order and terminated the father's rights to the child. The juvenile court concluded the father's right to due process and equal treatment under the law was not violated.

## II

[¶ 6] The father argues the guardian ad litem failed to fulfill her mandatory duties. N.D.R.Juv.P. 17(b)(2)(C) provides:

"(b) *Responsibilities of a lay guardian ad litem.* A lay guardian ad litem must:

(1) advocate for the best interest of the child;

(2) exercise independent judgment, gather information, participate in negotiations, and monitor the case, including:

(A) reviewing relevant documents; including social services, psychological, psychiatric, medical, therapy, and education records;

(B) meeting with and observing the child in the home setting or placement;

(C) interviewing parents, siblings, caregivers, and other interested parties with relevant information to the case."

[¶ 7] In our review,

"The interpretation of a court rule, like the interpretation of a statute, is a question of law. When we interpret a rule or a statute, we apply the rules of statutory construction and look at the language of the rule or statute to determine its meaning. We give words their plain, ordinary, and commonly understood meaning and construe the statute or rule as a whole."

*State v. Ebertz*, 2010 ND 79, ¶ 8, 782 N.W.2d 350 (internal citations omitted).

[¶ 8] Both parties agree the guardian ad litem did not interview the father. The state argues this was not error because the guardian ad litem merely exercised discretion permitted by Rule 17(b)(2) to choose whether to interview the father. The state's argument assumes the guardian ad litem knew of the father's whereabouts and made a decision not to interview him. However, the guardian ad litem's report lists the father's whereabouts as unknown, indicating an inability to interview rather than a decision not to interview. The fa-

ther's receipt of the petition and report at the Richland county jail suggest that reasonable due diligence would have revealed his whereabouts. But the guardian ad litem did not need to look for the father; she was provided with his address. Copies of the petition for termination, supporting affidavit and affidavit of mailing were sent to both the guardian ad litem and the father. Because the affidavit of mailing listed the father's address at the Richland county jail and a copy of the affidavit was mailed to the guardian ad litem, the guardian ad litem had knowledge of the father's whereabouts.

[¶ 9] The state's argument also fails to account for the non-discretionary word "must" in N.D.R.Juv.P. 17(b). The plain language of the rule requires a guardian ad litem to interview parents. By this statement we are not requiring that the guardian ad litem must in every case review every listed document, meet every listed person and interview every listed party. Rather the guardian ad litem must perform the identified tasks or, unless obvious on the face of the record, adequately explain why they were not performed. The guardian ad litem's failure to interview the father under the circumstances in this case was statutory error.

### III

[¶ 10] The father argues the guardian ad litem's error resulted in a violation of his constitutional right to due process because her report was relied on in terminating his parental rights. Under the Fourteenth Amendment no State may "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. Article I, section 12, of the North Dakota Constitution also provides: "No person shall ... be deprived of life, liberty or property without due process of law." "The fundamen-

tal requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

[¶ 11] To determine whether procedures meet constitutional requirements a court must apply a three-factor test:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Adoption of S.A.L.*, 2002 ND 178, ¶ 11, 652 N.W.2d 912 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

[¶ 12] The United States Supreme Court has said:

"In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight.... [U]se of a 'fair preponderance of the evidence' standard in such proceedings is inconsistent with due process."

*Santosky v. Kramer*, 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The alleged due process violation here is the guardian ad litem's failure to follow a court rule to interview the father. To determine whether the risk of error from this failure is so substantial as to offend due process, we analyze the three *Eldridge* factors.

### A.

[¶ 13] The first *Eldridge* factor is, "the private interest that will be affected by the official action." *Eldridge,* 424 U.S. at 335, 96 S.Ct. 893; *Adoption of S.A.L.,* 2002 ND 178, ¶ 11, 652 N.W.2d 912.

"[A] natural parent's 'desire for and right to "the companionship, care, custody, and management of his or her children" ' is an interest far more precious than any property right.... A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one."

*In re D.C.S.H.C.,* 2007 ND 102, ¶ 16, 733 N.W.2d 902 (quoting *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).)

[¶ 14] "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe [on a] fundamental liberty interest, but to end it." *Santosky,* 455 U.S. at 759, 102 S.Ct. 1388. The guardian ad litem's failure to interview the father was error. Because the private interest in the accuracy and justice of a decision terminating parental rights is a commanding one, the first *Eldridge* factor weighs in the father's favor.

### B.

[¶ 15] The second *Eldridge* factor is, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Eldridge,* 424 U.S. at 335, 96 S.Ct. 893; *Adoption of S.A.L.,* 2002 ND 178, ¶ 11, 652 N.W.2d 912. The second *Eldridge* factor begins by assessing the risk of an erroneous deprivation resulting from the procedures as they were applied. In this case, the risk of erroneously depriving the father of his parental rights because of the guardian ad litem's failure to interview him was low.

[¶ 16] The juvenile court correctly determined that the risk of erroneous deprivation was minimal because the father testified at trial and his counsel had opportunity to cross-examine witnesses. "An incarcerated parent's due process rights are generally satisfied if the 'prisoner is represented at the termination hearing by counsel and has an opportunity to appear by deposition or other discovery technique.' " *Adoption of S.A.L.,* 2002 ND 178, ¶ 10, 652 N.W.2d 912 (quoting *Adoption of J.W.M.,* 532 N.W.2d 372, 376 (N.D. 1995)). Because the father and his counsel were present at trial the father had an opportunity to provide an alternate version of the facts that would support his opposition to the termination of his parental rights. This opportunity reduced the risk of an erroneous deprivation.

[¶ 17] The second *Eldridge* factor also addresses the probable value of additional or substitute procedural safeguards. Under this factor we consider what probable value may have come from interviewing the father. Prior to foster care placement the father saw the child only a few times. The father had no contact with the child while on parole and participated in one family meeting via telephone in September 2014. What information the father was able to provide could be offered at trial. The father points to no specific facts that could have been obtained in an interview and were not provided at trial. Because the father was afforded a meaningful opportunity to be heard in this case and because he has not shown that his interview would add value, the second *Eldridge* factor weighs in supporting of the juvenile court's conclusion that the father's due process right was not violated.

## C.

[¶ 18] The final *Eldridge* factor is, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335, 96 S.Ct. 893; *Adoption of S.A.L.*, 2002 ND 178, ¶ 11, 652 N.W.2d 912. The government has "a fiscal and administrative interest in reducing the cost and burden of [parental termination] proceedings." *Santosky*, 455 U.S. at 766, 102 S.Ct. 1388.

[¶ 19] The juvenile court could have reasonably found that the fiscal and administrative cost of reversing or postponing the case would be significant and unnecessary in light of the father's availability to testify at trial. It would also be reasonable for the court to find the cost outweighed the benefit of the father's interview because the father was unlikely to have any relevant information due to his limited involvement in the child's life. The third *Eldridge* factor weighs in support of the juvenile court's conclusion that the father's right to due process was not violated.

## IV

[¶ 20] While we have serious concerns about the guardian ad litem's failure to interview the father, the failure in this case was harmless error. Rule 61, N.D.R.Civ.P., states:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

[¶ 21] Under N.D.C.C. § 27–20–44(1)(c), there are two separate grounds for the termination of parental rights. The first ground is the child is deprived, the causes of deprivation are likely to continue and the child will likely suffer serious physical, mental, moral or emotional harm as a result. N.D.C.C. § 27–20–44(1)(c)(1). The second ground is the child is deprived and has been in foster care at least 450 out of the previous 660 nights. N.D.C.C. § 27–20–44(1)(c)(2). The judicial referee made alternate findings and cited evidence supporting both grounds for termination. The juvenile court adopted the judicial referee's order, finding the child was in continuous foster care for 774 consecutive days and nights. Because this determination alone was sufficient for termination of the father's parental rights under N.D.C.C. § 27–20–44(1)(c)(2), the statutory error in this case amounted to harmless error.

## V

[¶ 22] The guardian ad litem's failure to interview the father did not violate his constitutional right to due process. The juvenile court order adopting the judicial referee's order and terminating the father's parental rights is affirmed.

[¶ 23] LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 24] I concur in the result reached in the opinion. While I agree with the analysis under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), I do not agree that the analysis is necessary in this instance. My concern is that we not establish a precedent that any alleged error in executing a statute or rule of court must be examined as a possible con-

stitutional violation of the right to due process under *Eldridge*.

[¶ 25] The majority decides the guardian ad litem erred in the application of a court rule and elevates that error to a possible due process violation. The majority concludes the plain language of the rule requires a guardian ad litem to interview the parents but it also concedes that it does not require the guardian ad litem to meet every listed person and interview every listed party. For purposes of my concurrence I agree that under the circumstances of this case the guardian ad litem should have interviewed M.P., the father. I also agree the father has a commanding interest in the decision to terminate his parental rights.

[¶ 26] The father argues the failure of the guardian ad litem to follow the court rule and interview him violated his due process rights. But I know of no constitutional requirement that a guardian ad litem be appointed in the first instance, and, more significantly, that the guardian ad litem appointed for the benefit of the minor child violates the due process rights of the father if the guardian ad litem fails to interview the father. Rather, the father should have insisted on the right to examine the guardian ad litem under oath before the guardian ad litem's report was introduced for the purpose of arguing the weight of the evidence contained in that report in light of the guardian ad litem's failure to interview the father. As the majority opinion notes at ¶ 10, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. The meaningful time was the January 2016 trial and the meaningful manner was the examination of the guardian ad litem. But, as the majority opinion also notes, the guardian ad litem was not sworn or subject to cross-examination and no party objected to any irregularity in the proceeding.

[¶ 27] I do not believe the father had a due process right to be interviewed by the minor child's guardian ad litem. Therefore the failure of the guardian ad litem to follow the court rule and interview the father does not implicate the father's due process rights. Rather, the failure to interview the father should be considered in the light of the interests of the child and the weight to be given to the report of the guardian ad litem.

[¶ 28] GERALD W. VANDE WALLE, C.J.