2017 ND 215

Deb COON, Randal Coon, Carolyn Dostert, Alan Dostert, Lee Fraase, Carol Hoveskeland, Lee Fischer, Ametta Frueh, Tim Frueh, Jan Kasowski, Paul Kasowski, Bill Marcks, Jackie Marcks, Gerald Marcks, David Percel, Liane Stout, Roy Thompson, Sheila Thompson, Judith VonBank, Robert VonBank, Craig Wendt, and Vicki Wendt, Appellants

v.

NORTH DAKOTA DEPARTMENT OF HEALTH and Rolling Green Family Farms RE, LLP, Appellees

No. 20170089

Supreme Court of North Dakota.

Filed 8/30/2017

Rehearing Denied Sept. 29, 2017

Derrick L. Braaten (argued), J.J. William England (appeared) and David C. Keagle (on brief), Bismarck, ND, for appellants.

Margaret I. Olson, Office of the Attorney General, Bismarck, ND, for appellee North Dakota Department of Health.

Robin W. Forward, Bismarck, ND, for appellee Family Farms RE, LLP.

Crothers, Justice.

[¶1] Numerous landowners from the Buffalo area appeal from a district court judgment affirming the Department of Health's decision to issue Rolling Green Family Farms an animal feeding operation (AFO) permit. The landowners argue the Department erred by issuing Rolling Green an AFO permit and by failing to reopen the public comment period after Rolling Green provided further information to supplement its permit application. We affirm.

I

[¶2] In September 2015 Rolling Green applied to the Department for a permit to operate an animal feeding operation near Buffalo. The application stated Rolling Green planned to have a 8,832 head swine sow facility, which included 800 nursery pigs, 1,120 farrowing sows, 5,312 gestation sows and 1,600 finish pigs. The application included information about the proposed facility, including facility design information, facility plans, technical specifications, zoning requirements, water quality information, geologic and soil information, an operation and maintenance plan and a nutrient management plan. The Department requested additional information from Rolling Green, which was provided. In December 2015 Rolling Green submitted a revised permit application. The revised application stated the facility would be a 9,056 head swine sow facility with 800 nursery pigs, 1,344 farrowing sows, 5,312 gestation sows and 1,600 finish pigs.

[¶3] On December 28, 2015, the Department issued a public notice of its intent to issue a permit to Rolling Green. The notice included the proposed location of the facility and informed the public where comments could be sent and how to obtain additional information. The notice stated a public hearing would be scheduled if there was significant interest.

[¶4] After receiving numerous comments, the Department extended the public comment period and announced the time and location of a public hearing. On March 17, 2016, the Department held a public hearing. Over 130 people attended the hearing, including some of the landowners. After the comment period ended the Department asked Rolling Green to provide additional information, including additional soil borings and air quality information; to correct inaccuracies in its nutrient management plan; and to provide additional information about its design plan. Rolling Green provided the additional information. On June 30, 2016, the Department issued its response to comments. On August 4, 2016, the Department issued its findings and conclusions, an updated fact sheet and the final AFO permit.

[¶5] On September 2, 2016, the landowners appealed to the district court. The landowners argued the permit was not in accordance with the law, the Department did not have authority to issue an AFO permit to Rolling Green and a North Dakota pollutant discharge elimination system (NDPDES) permit was required. The landowners also claimed the Department violated their constitutional due process rights because it failed to provide further opportunity to comment after Rolling Green submitted additional information following the comment period.

[¶6] The district court affirmed the Department's permit decision, ruling its decision was supported by the record and was in accordance with applicable laws and regulations.

II

[¶7] This Court reviews a district court's decision reviewing an administrative agency's decision under the standards

set out in N.D.C.C. § 28-32-46. *People to Save the Sheyenne River, Inc. v. N.D. Dep't of Health*, 2005 ND 104, ¶ 15, 697 N.W.2d 319. We review the agency's decision and record compiled before the agency while giving respect to the district court's sound reasoning. *Id.* This Court has said the Department's permitting decision is entitled to even greater deference than a decision after an adjudicative proceeding, and we review the Department's permitting decision to determine whether the decision is arbitrary, capricious or unreasonable. *Id.* at ¶ 24. "A decision is arbitrary, capricious, or unreasonable if it is not the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation." *Id.*

### III

■ [¶8] The landowners argue N.D. Admin. Code §§ 33-16-03.1-05(1) and 33-16-03.1-03(4) require Rolling Green to obtain a NDPDES permit because it is a concentrated animal feeding operation (CAFO). They claim the Department did not have authority to issue Rolling Green an AFO permit because the administrative rules required Rolling Green to apply for and obtain a NDPDES permit.

[¶9] Rolling Green's permit application stated the facility would be a 9,056 head swine sow facility with 8,256 sows or pigs, each weighing over 55 pounds. A "concentrated animal feeding operation" is "an animal feeding operation that is defined as a large concentrated animal feeding operation, as a medium concentrated animal feeding operation, or is a small or other type of animal feeding operation designated as a concentrated animal feeding operation in accordance with section 33-16-03.1-04." N.D. Admin. Code § 33-16-03.1-03(4). A "large concentrated animal feeding oper-

ation" is "any animal feeding operation that stables or confines as many as or more than ... [t]wo thousand five hundred swine, each weighing fifty-five pounds [24.95 kilograms] or more[.]" N.D. Admin. Code § 33-16-03.1-03(11). The proposed Rolling Green facility is a large concentrated animal feeding operation.

[¶10] Section 33-16-03.1-03(4), N.D. Admin. Code, states, "All concentrated animal feeding operations are required to obtain a North Dakota pollutant discharge elimination system permit pursuant to chapter 33-16-01." Section 33-16-03.1-05(1), N.D. Admin. Code, further states, "Any animal feeding operation that has been defined as a concentrated animal feeding operation in section 33-16-03.1-03 ... must obtain a North Dakota pollutant discharge elimination system permit pursuant to chapter 33-16-01." The plain language of the Department's rules requires all CAFOs to obtain a NDPDES permit. Because Rolling Green is a CAFO, N.D. Admin. Code ch. 33-16-03.1 requires it to obtain a NDPDES permit.

[¶11] The Department responded to a public comment about whether Rolling Green must obtain a NDPDES permit, stating:

"In 2003 and 2008, EPA adopted rules requiring certain non-discharging facilities to apply for National Pollutant Discharge Elimination System (NPDES) permit coverage, but these requirements were held invalid .... Current EPA rules require only discharging facilities to obtain an NPDES permit-40 CFR § 122.23(d). The Department implements the NPDES program in accordance with current EPA rules. Accordingly, the proper permit for this facility is not an NPDES permit but instead an animal feeding operation Approval to Operate permit under NDAC § 33-16-03.1.

"The Department is in the process of reviewing its rules to determine if any need updating. But even if the Department's rules could be read as requiring a rule that would require a non-discharging facility to apply for an NPDES permit, such requirement would not be grounds for denying this permit or issuing any type of enforcement action against the facility. See NDCC § 23-01-04.1."

The Department did not apply its own rules requiring Rolling Green to obtain a NDPDES permit because it claimed it implements the program in accordance with current federal regulations and the federal regulations do not require a NDPDES permit for a non-discharging facility such as Rolling Green.

[¶12] "An agency has a reasonable range of discretion to interpret and apply its own regulations, and the agency's expertise is entitled to deference when the subject matter is complex." *Voigt v. N.D. Pub. Serv. Comm'n*, 2017 ND 76, ¶ 28, 892 N.W.2d 149 (quoting *St. Benedict's Health Ctr. v. N.D. Dep't of Human Servs.*, 2004 ND 63, ¶ 9, 677 N.W.2d 202). However, an agency's rules and regulations, if within the agency's authority, generally are binding upon the agency as if they were enacted by the legislature. *Fercho v. Montpelier Pub. Sch. Dist. No. 14*, 312 N.W.2d 337, 341 (N.D. 1981).

[¶13] Section 23-01-04.1, N.D.C.C., provides the statutory rulemaking authority and procedure for the Department's regulations related to animal feeding operations, and says the Department may not adopt a rule more stringent than corresponding federal regulations except in certain circumstances:

"1. Except as provided in subsection 2, no rule which the state department of health, hereinafter the department, adopts for the purpose of the state administering a program under the federal Clean Air Act, federal Clean Water Act, federal Safe Drinking Water Act, federal Resource Conservation and Recovery Act, federal Comprehensive Environmental Response, Compensation and Liability Act, federal Emergency Planning and Community Right to Know Act of 1986, federal Toxic Substances Control Act, or federal Atomic Energy Act of 1954, may be more stringent than corresponding federal regulations which address the same circumstances. In adopting such rules, the department may incorporate by reference corresponding federal regulations.

2. The department may adopt rules more stringent than corresponding federal regulations or adopt rules where there are no corresponding federal regulations, for the purposes described in subsection 1, only if it makes a written finding after public comment and hearing and based upon evidence in the record, that corresponding federal regulations are not adequate to protect public health and the environment of the state. Those findings must be supported by an opinion of the department referring to and evaluating the public health and environmental information and studies contained in the record which form the basis for the department's conclusions.

3. If the department, upon petition by any person affected by a rule of the department, identifies rules more stringent than federal regulations or rules where there are no corresponding federal regulations, the department shall review and revise those rules to comply with this section within nine months of the filing of the petition.

4. All existing rules of the department remain in full force and effect after July 10, 1989, pending department review and revision under subsection 3.

5. Any person who is issued a notice of violation, or a denial of a permit or other approval, based upon a rule of the department which is more stringent than a corresponding federal regulation or where there is no corresponding federal regulation, may assert a partial defense to that notice, or a partial challenge to that denial, on the basis and to the extent that the department's rule violates this section by imposing requirements more stringent than corresponding federal regulations, unless the more stringent rule of the department has been adopted in compliance with this section."

[¶14] Under the plain language of N.D.C.C. § 23-01-04.1(1), the Department may not adopt a rule for the purpose of administering a program under the federal Clean Water Act that is more stringent than the corresponding federal regulations which address the same circumstances. This Court has said the EPA delegated authority to the Department to issue NDPDES permits as part of the Clean Water Act, and the Department must comply with federal law in issuing the permits. *People to Save the Sheyenne River*, 2005 ND 104, ¶ 9, 697 N.W.2d 319. The Department does not have authority to adopt a rule related to NDPDES permits that is more stringent than the corresponding federal regulations, except as provided in N.D.C.C. § 23-01-04.1(2).

[¶15] Under federal Clean Water Act regulations, a CAFO only is required to apply for a pollutant discharge elimination system permit if the CAFO actually discharges pollutants. *Waterkeeper Alliance, Inc. v. U.S. EPA*, 399 F.3d 486, 504-06 (2d Cir. 2005); *see also* 40 CFR § 122.23(d) (2012) (stating a CAFO must not discharge unless the discharge is authorized by an NPDES permit). Section 33-16-03.1-05(1), N.D. Admin. Code, requires any operation defined as a CAFO to obtain a NDPDES permit. It does not require the CAFO to actually discharge pollutants. The current rules were adopted in 2004 before *Waterkeeper Alliance* was decided and the federal regulations were amended. The current state rules have not been amended in response to the change in federal law. The state administrative rules are more stringent than the current federal regulations. However, the state administrative rules were not more stringent than the corresponding federal regulations when they were adopted, and therefore the Department did not exceed its authority by adopting the rules.

[¶16] Under N.D.C.C. § 23-01-04.1(2), the Department may adopt a rule that is more stringent than the corresponding federal regulation only if the Department makes a written finding after public comment and hearing that the federal regulations are not adequate to protect public health and the environment. In this case the Department did not adopt the state rule when the federal regulation was less stringent. Therefore, the Department was not required to make written findings that the federal regulations were not adequate to protect public health and the environment to support the more stringent rule.

[¶17] Section 23-01-04.1(3), N.D.C.C., requires the Department to review and revise a rule that is more stringent than a federal regulation or rule if a person affected by the Department rule files a petition. No evidence shows a person affected by N.D. Admin. Code § 33-16-03.1-05 has petitioned the Department to review and revise the rule because it is more stringent than the federal regulations. Therefore, the Department was not required to review and revise the rule under N.D.C.C. § 23-01-04.1(3).

[¶18] Although N.D. Admin. Code § 33-16-03.1-05(1) requires all CAFOs to

obtain a NDPDES permit and is more stringent than the corresponding federal regulations, the rule remains in full force and effect pending department review and revision. N.D.C.C. § 23-01-04.1(4). The Department was required to apply its own rules, including requiring a CAFO to obtain a NDPDES permit under N.D. Admin. Code § 33-16-03.1-05(1). *See Havener v. Glaser*, 251 N.W.2d 753, 761 (N.D. 1977) (stating administrative rules are binding upon the agency enacting them, and upon the public). The Department should amend its rule to make it consistent with the federal regulation or make findings explaining the deviation, but the current rule remains in effect until amended. An agency "does not, as a general rule, have the discretion to waive, suspend, or disregard in a particular case a validly adopted rule so long as such rule remains in force." *Havener*, at 761, (quoting 2 Am. Jur. 2d *Administrative Law* § 350 (1962)). The Department erred by failing to apply its own rules.

■ [¶19] However, reversing the Department's decision and remanding for the Department to apply its rules in this case would be a useless act. Section 23-01-04.1(5), N.D.C.C., states a person who is denied a permit or other approval based upon a rule which is more stringent than a corresponding federal regulation may assert a partial challenge to the denial on the basis that the Department's rule violates N.D.C.C. § 23-01-04.1 by imposing requirements that are more stringent than corresponding federal regulations. It would be an exercise in futility to reverse and direct the Department to deny Rolling Green an AFO permit when Rolling Green has stated in briefing that it would challenge the denial under N.D.C.C. § 23-01-04.1(5) because the rule is more stringent than the corresponding federal regulation.

[¶20] New livestock facilities are required to apply for and obtain an AFO permit or a NDPDES permit. N.D. Admin. Code § 33-16-03.1-07(1). Rolling Green admits it is required to apply for and obtain at least an AFO permit. Reversing the Department's decision granting the AFO permit would needlessly prolong this matter, only to end up with the same result. Rolling Green could successfully challenge the denial and still would obtain an AFO permit.

[¶21] Reversing the Department's decision and remanding for the Department to apply its rules would be a useless act under the facts and circumstances of this case. The Department's error in failing to first deny Rolling Green's application for an AFO permit is not a reversible error. *Cf.* N.D.R.Civ.P. 61 (stating "Unless justice requires otherwise, no error ... by the court or a party, is ground ... for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not effect any party's substantial rights."). We conclude the Department erred by failing to apply its administrative rules but reversing the Department's decision would be futile because Rolling Green could successfully challenge the denial under N.D.C.C. § 23-01-04.1(5).

IV

[¶22] The landowners argue the Department erred by failing to reopen the public comment period when Rolling Green submitted new or revised documents for its permit application after the public comment period. They contend the late disclosure significantly prejudiced their ability to participate in the permitting process through public comment. They claim the Department's failure to allow the public to comment on the additional information

submitted deprived the landowners of their constitutional due process rights.

## A

[¶23] Section 33-16-03.1-13, N.D. Admin. Code, provides the Department's rules for public participation in the permitting process.

"1. If the department determines a significant degree of public interest exists regarding new or expanding facilities, it shall issue a public notice requesting comment on applications for both individual permits and general state animal feeding operation permits.

2. The department shall provide a period of not less than thirty days during which time interested persons may submit comments. The period of comment may be extended at the discretion of the department.

. . .

6. The department shall hold a public meeting or hearing as it deems appropriate to allow additional public input or to provide information to the public concerning the department's review of the facility.

7. In making its final decision on the application or draft permit, the department shall consider all comments submitted within a timeframe specified in the public notice and all comments received at any public hearing. Within twenty days of the close of the public comment period, the applicant, if any, may submit a written response to the public comments. The department shall consider the applicant's response in making its final decision.

8. Pursuant to the requirements of this chapter and within sixty days of the applicant's response to the public comments, the department shall make a final determination as to whether the permit should be approved, approved with conditions, or denied."

N.D. Admin. Code § 33-16-03.1-13.

[¶24] Under the Department's rules, a comment period is not held unless the Department determines there is a significant degree of public interest. N.D. Admin. Code § 33-16-03.1-13(1). If the Department decides to hold a public comment period, the period must be at least thirty days and the Department has discretion to extend the period. N.D. Admin. Code § 33-16-03.1-13(2). A public meeting or hearing will be held if the Department deems it appropriate to allow additional public input or to provide information to the public. N.D. Admin. Code § 33-16-03.1-13(6). The Department has discretion to decide whether a public comment period should be held, whether the length of the comment period should exceed thirty days and to determine if a public hearing is appropriate. The Department's rules specifically indicate a permit applicant may submit a written response to the public comments, which allows the applicant to provide further information. The rules do not require the Department to reopen the public comment period if it receives further information from the applicant.

[¶25] Here, the Department provided an 83 day comment period. The Department also held a public meeting and hearing on the permit application. The Department requested additional information and revisions to the application from Rolling Green after the comment period ended, including revisions or additional information related to the facility's design and the nutrient management plan.

[¶26] The Department gave the public an opportunity to comment and extended the comment period longer than the required 30 days. The Department also held a public meeting. The rules allow the applicant to provide more information in re-

sponding to the public comments, and do not require the Department to reopen the public comment period. The Department did not abuse its discretion by failing to reopen the public comment period.

### B

[¶27] The landowners claim their due process rights were violated because their property interests will be affected by the Department's decision to grant a permit and they were not afforded an opportunity to comment on the additional information Rolling Green submitted after the comment period. They claim Rolling Green disclosed there would be 199,680 piglets at the facility, the piglets must be counted separately from the farrowing sows to determine the distance the animal feeding operation must be setback from an existing residence under N.D.C.C. § 23-25-11(7), a 1.5 mile setback is required under N.D.C.C. § 23-25-11(7)(a)(5) because of the large number of piglets, and several of the landowners live within the 1.5 mile setback area.

[¶28] The state and federal constitutions provide the State may not deprive any person of life, liberty or property without due process of law. *See* U.S. Const. amend. XIV, § 1; N.D. Const. art. I, § 12. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *In re N.A.*, 2016 ND 91, ¶ 10, 879 N.W.2d 82 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The first inquiry in every due process challenge is to determine whether the plaintiff has been deprived of a "property" or "liberty" interest. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due pro-

cess." *Id.*; *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (stating the three-prong test from *Mathews v. Eldridge* applies once a protected liberty or property interest has been established).

[¶29] The landowners argue their property interests will be affected by the Department's decision because Rolling Green's proposed feeding operation is required to be set back 1.5 mile from any existing residence under N.D.C.C. § 23-25-11(7)(a)(5) based on the number of animal units at the facility, and some of their properties are located within the 1.5 mile setback area. The landowners cite *Hagerott v. Morton Cty. Bd. of Comm'rs*, 2010 ND 32, ¶ 10, 778 N.W.2d 813, in support of their claim that they have a property interest that will be affected by the Department's decision.

[¶30] In *Hagerott*, 2010 ND 32, ¶ 10, 778 N.W.2d 813, this Court held a property owner had standing to challenge a county commission's decision to grant a conditional use permit for a feedlot because he was aggrieved by the commission's decision. We said the county commission's decision to grant the permit to build the feedlot within the one mile odor setback of a neighbor's proposed house had the effect of diminishing and injuriously affecting the neighbor's personal and individual interest in his land, and would adversely effect his use and enjoyment of the property. *Id.*

[¶31] Assuming, without deciding the issuance of a permit could deprive a landowner located within the setback area of a protected property interest, the landowners failed to establish they will be deprived of a property interest under the facts and circumstances of this case. The Department calculated the number of animal units and determined a setback of one mile was required under N.D.C.C. § 23-25-11(7)(a)(4). The Department found the

nearest residence was over a mile from the facility. An agency has a reasonable range of discretion to interpret and apply its own regulations, and the agency's expertise is entitled to deference when the subject matter is complex. *Voigt*, 2017 ND 76, ¶ 28, 892 N.W.2d 149. The Department's calculation of the number of animal units is entitled to deference. The permit shows the Department calculated 3,382.4 animal units, which requires a one mile setback. *See* N.D.C.C. § 23-25-11(7)(a)(4). The landowners have not shown that they have a property interest that will be affected by the official action, or that they were unconstitutionally deprived of notice and any opportunity to respond. We conclude the landowners failed to establish a due process violation.

## V

[¶32] We affirm the district court judgment affirming the Department's decision to issue Rolling Green an AFO permit.

[¶33] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

William Neumann, S.J.

Gerald W. VandeWalle, C.J.

[¶34] The Honorable William Neumann, S.J., sitting in place of Tufte, J., disqualified.

[¶35] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.